379 So.2d 18 (1979)
Jo Juanna Wiggins ATTEBERRY, Plaintiff and Appellee,
v.
Winston ATTEBERRY, Jr., Defendant and Appellant.
No. 7275.
Court of Appeal of Louisiana, Third Circuit.
December 19, 1979.
Rehearing Denied February 4, 1980.
Writ Granted March 21, 1980.
Louis M. Corne, Lafayette, for defendant-appellant.
Allen, Gooch & Bourgeois, Arthur I. Robison, Lafayette, for plaintiff-appellee.
Before CULPEPPER, GUIDRY and YELVERTON, JJ.
CULPEPPER, Judge.
This is a child custody case. The children involved are Winston Todd Atteberry, now 9 years of age, and Garrett T. Atteberry, now 6 years of age. The district judge awarded custody to the mother, Jo Juanna Wiggins Atteberry. The father, Winston Atteberry, Jr., appealed.
The issue is whether the granting of permanent custody to the mother is in accordance with the best interest of the children. Our decision of this issue is difficult because the trial judge awarded custody to the mother, although she was admittedly living in open adultery at the time of trial. No case from our Supreme Court has gone this far. In only one case have the Courts of Appeal awarded custody to a mother living in open adultery at the time of trial, Baber v. Baber, 354 So.2d 699 (La. App. 4th Cir. 1978), and that decision was by a divided court. We ultimately conclude, as did the dissenting judge in Baber, that a mother who so openly and flagrantly disregards our society's rules of moral behavior is unfit for custody of minor children. We conclude the best interest of these children requires that custody be awarded to the father.
The record shows that the Atteberrys were married on April 21, 1969. The oldest child, Todd, was born in 1970. The youngest, Garrett, was born in 1973. Plaintiff and defendant had a stormy marriage. There is much evidence of verbal abuse, *19 uncontrolled tempers, threats, accusations of adultery and other conduct contributing to their matrimonial difficulties.
On September 27, 1977, Mrs. Atteberry filed a suit for separation from bed and board, on the grounds of cruelty, and for temporary custody of the two children. Judgment was rendered on October 10, 1977 awarding provisional custody to Mrs. Atteberry, with the father having visitation rights on weekends.
On November 7, 1977, Mr. Atteberry filed an answer to his wife's suit for separation and a reconventional demand for divorce on the grounds of adultery. In August of 1978, a trial was held on the suit for separation, the reconventional demand for divorce and the custody issue. On October 25, 1978, a judgment of divorce was rendered in favor of Mr. Atteberry on the grounds of adultery. The district judge held under advisement the custody issue, pending an investigation ordered in September of 1978 by the trial judge of the family environment of both the mother and the father. These investigations of the two homes were made in September of 1978 and are filed in evidence. On April 23, 1979, the district judge, without giving reasons, awarded permanent custody of the two children to Mrs. Atteberry.
On appeal, the father's principal contention is that the mother's admitted adulterous relations make her unfit for custody. The father alleged adulterous conduct of the mother beginning in 1976 and involving four different men. No evidence was presented to support the allegations with two of the men named. However, the wife admitted one act of adultery with a third man, Durwood Cantrelle. This individual also gave testimony concerning the relationship and stated that numerous adulterous acts occurred over a two-month period in the summer of 1977. Two private investigators employed by the father were not eyewitnesses to any acts of adultery during this relationship, but they did establish meetings which were clandestine in nature.
Of greater consequence is the wife's past and present relationship with a fourth man, Warner "Sonny" Manning. By the wife's own admission and the testimony of numerous witnesses, the record conclusively shows that at the time of trial in August of 1978 Jo Juanna had lived in open adultery with Manning since about January of 1978. And, insofar as the record before us shows, she is still living in open adultery with him.
Sometime after the separation in 1977, Jo Juanna moved with her two children from the matrimonial domicile in Lafayette to Fort Necessity, where her family lives. She and the children moved into a three bedroom house in a rural area and she took Sonny Manning into the house as a boarder. At some point, the couple became lovers, a fact known to her family and friends. He and Jo Juanna testified he occupied his own bedroom except for weekends when the boys were with their father in Lafayette. However, Todd testified Sonny slept with his "mama".
Manning has provided some support for the household and assumed a parental role with the two boys, taking them to school and administering discipline. The couple also took the Atteberry children, as well as Manning's son by a previous marriage and Manning's younger brother, on a vacation to Disney World. They all traveled together in a camper. Todd testified he and Garrett slept in the top bunk and Sonny slept in the lower bunk with his "mama".
Both Jo Juanna and Sonny testified to their desire to marry when the Atteberry divorce judgment is final. The divorce judgment rendered October 25, 1978, became final after 60 days, LSA-C.C.P. Article 2087, but we have no evidence nor contention that they have married. Neither the mother nor her paramour think their adulterous relationship is detrimental to the children. They, as well as witnesses testifying on their behalf, presented the relationship as acceptable because the couple has fallen in love and intend to marry. The couple has made no effort to hide their relationship.
The applicable statutory law set forth in LSA-C.C. Article 157 reads in pertinent as follows:

*20 "A. In all cases of separation and divorce, permanent custody of the child or children shall be granted to the husband or the wife, in accordance with the best interest of the child or children."
There is some question in the jurisprudence as to whether the 1977 amendment to Article 157 was intended by the legislature to overrule the maternal preference rule as stated in Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971), to the effect that unless the mother is proven unfit or unable to care for the minor children, custody must be awarded to her. One view is that under Article 157, as amended in 1977, maternal preference is no longer a rigid rule but is merely one of the factors to be considered and weighed in determining the best interest of the children. See the majority and dissenting opinions in Heymann v. Heymann, (3rd Cir. 1979); also Thornton v. Thornton, 377 So.2d 417 (La.App. 2d Cir. 1979). Nevertheless, regardless of whether the maternal preference rule as stated in Fulco is still the law, the result is the same in the present case, because the mother here is morally unfit for custody.
The mother relies heavily on Monsour v. Monsour, 347 So.2d 203 (La.1977) in which the mother had been living in open adultery for a period of four months at the time the father filed a rule to change custody of a nine-year-old boy. After the rule was served on her, the mother married her paramour. The trial judge held that at the time of the hearing of the rule to change custody, the mother had reformed, was leading a stable life and was suited for custody. The Court of Appeal reversed, but our Supreme Court reinstated the trial judge's decision. We find the Monsour case is not controlling here, because the mother in the present case had a worse record of adulterous relationships, and she was still living in open adultery at the time of trial.
The mother also relies on Baber v. Baber, 354 So.2d 699 (La.App. 4th Cir. 1978), where the court, in a two to one decision, granted custody of an 11-year-old daughter to the mother, who, at the time of trial had engaged in an adulterous relationship for a period of five years on weekends at her "fiance's" horse ranch. In affirming the trial judge, the majority in the Court of Appeal emphasized the evidence that the father had disciplined his 17-year-old daughter by a previous marriage, by spanking her to the extent that she told her doctor she contemplated suicide. The dissenting judge in Baber found the mother's flagrant disregard for society's rules of moral behavior rendered her unfit for custody. He also construed the evidence of one occasion of the father spanking the older child as not indicating such an abusive or reasonable nature as to render the father unfit for custody.
In the recent case of Cleeton v. Cleeton, 369 So.2d 1072 (La.App. 1st Cir. 1979) the court reviews the jurisprudence holding that living in open adultery, especially in the presence of and to the knowledge of the children, creates such an unwholesome environment as to be grossly harmful to the moral welfare of children. We find this jurisprudence applicable here. We conclude the mother is morally unfit for custody of these two children.
We are aware of the jurisprudential rule that, upon appellate review, the determination of the trial judge in child custody matters is entitled to great weight. Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (La.1971). Since the trial judge gave no written reasons, we do not know whether he found the mother morally fit. If he did, we find he abused his discretion in this regard.
After the trial in August of 1978, the trial judge made a minute entry on September 5, 1978 stating "The court is of the opinion that permanent custody should not presently be awarded to either party. Instead, the court is recommending an investigation of both family environments by the Louisiana Division of Family Services, at the conclusion of which a determination of permanent custody will be made." During September of 1978, separate investigations by different welfare workers were made of the home of the father in Lafayette and the home of the mother in Fort Necessity. The *21 reports are filed in evidence. Each is in detail and concludes with the recommendation that the respective parent and home is suitable.
As regards the father, the report on him shows that he is 34 years of age, has a college degree in business, is a member of the Baptist faith and is self-employed as a test engineer in the oilfields with earnings of about $20,000 per year. His parents were rice farmers in the Rayne area. He presently lives with his aunt, Mrs. Edith Atteberry, in a two-bedroom apartment in Lafayette. Although he says the apartment is adequate for the children, he states that if he receives custody of the children he plans to buy a three-bedroom house on 1.4 acres near Rayne. His aunt and babysitters will assist him in the care of the children when he is away from home on business. From this report, it appears the father is well able to care for the children.
We have considered the possibility that the trial judge was influenced by evidence that the father disciplined the older child with a belt during one of the weekend visitations. The mother testified that on one occasion when the child returned to Fort Necessity, she saw bruises on his buttocks and took pictures, which are in the record. These pictures do show slight bruises on the child's buttocks. The father admitted he had on occasion disciplined the child with a belt, but he denied ever causing bruises. Whether a child should be disciplined with a belt or a paddle or a switch is a very controversial matter in our society. There are cases which hold that spanking with a wooden paddle in our public schools is permissible if necessary and if done in moderation. Like the dissenting judge in Baber, supra, we are most reluctant to hold that this one alleged incident of disciplining with a belt proves this father is so unreasonable or abusive in his discipline of the children as to be unfit for their custody.
Our conclusion is we must hold the mother to be so morally unfit that custody cannot be awarded to her. Under the facts of the present case, we find the best interest of the children requires that custody be awarded to the father.
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that there be judgment herein in favor of the appellant, Winston Atteberry, Jr., and against the appellee, Jo Juanna Wiggins Atteberry, awarding to appellant the permanent custody of the two minor children, Winston Todd Atteberry and Garrett T. Atteberry. The right is reserved to the appellee to visit the children at such reasonable times and places as the district court may provide in future proceedings. All costs of the trial court, as well as the costs of this appeal, are assessed against the appellee.
REVERSED AND RENDERED.