389 So.2d 825 (1980)
Huey SHACKLEFORD, Plaintiff-Appellant,
v.
Hazel Tyler SHACKLEFORD, Defendant-Appellee.
No. 7760.
Court of Appeal of Louisiana, Third Circuit.
October 8, 1980.
*826 Broussard, Bolton & Halcomb, Daniel E. Broussard, Jr., Alexandria, for plaintiff-appellant.
James C. Downs, Alexandria, for defendant-appellee.
Before CULPEPPER, DOMENGEAUX and CUTRER, JJ.
CUTRER, Judge.
The issue presented on appeal is whether a household, in which a mother is living in open concubinage with an unmarried man, can be a suitable environment for the mother's nine year old son.
Huey and Hazel Shackleford married on February 27, 1960. Of this marriage, five children were born; two boys and three girls. Their ages at the time of the custody hearing (December 1979) were: Russell, 19; Evelyn, 17; Theresa, 15; Charlotte, 12 and Preston, 9.
On October 26, 1978, an uncontested separation judgment was rendered in favor of Huey Shackleford and against Hazel Shackleford. By agreement, the custody of four of the children was placed with the father and the custody of the remaining child, Preston, was placed with the mother.
On November 5, 1979, Huey Shackleford brought suit against Hazel for divorce on the ground that the couple had lived separate and apart for more than one year following judgment of separation. Shackleford also sued for custody of Preston. The custody portion of this suit was contested. After hearing the custody suit, the trial court rendered judgment continuing custody of Preston with the mother. The record reflects the following minute entry:
"For the oral reasons this day handed down the custody of the minor child, Preston Wayne Shackleford, is to remain with the mother, Hazel Tyler Shackleford."
The oral reasons referred to in this minute entry do not appear in the record. Huey Shackleford appeals from the judgment. We reverse and remand.
The basic facts of this case are not in dispute. Mrs. Shackleford began an adulterous affair with Wallace Gunter 12 to 14 years before her separation from her husband. In approximately October 1978, Mrs. Shackleford left her husband and moved into the home of Gunter. Mrs. Shackleford continued to live with Gunter and was living with him at the time of the divorce and custody hearing. She admitted this in her answer filed herein and both Mrs. Shackleford *827 and Gunter testified that they were living together as man and wife in his home near the Forest Hill community. Mrs. Shackleford also stated that a baby had been born to her on October 29, 1979 and that Gunter was the father of same.
During the period of time that Mrs. Shackleford and Gunter were living together, Preston, the nine year old boy, was living with his mother and Gunter. She stated that Preston knew that Gunter was not her husband but she gave no thought to what effect such an arrangement may have on the boy.
Mrs. Shackleford was not employed. Gunter provided the support for Mrs. Shackleford and Preston after she and Gunter began living together. The photographs in evidence and the testimony reflect that the Gunter house is a brick home which has adequate facilities to provide for Gunter, Mrs. Shackleford, Preston, the new baby and Gunter's mother. Preston was provided his own bedroom. Gunter testified that he loved the boy as his own.
Gunter and Mrs. Shackleford both testified that they loved each other and planned to get married as soon as the divorce became final. The brief filed by defendant states that the marriage took place after the divorce, but there is no evidence of such in the record and such cannot be considered by this court.
As to plaintiff's circumstances, he was employed as a pulpwood cutter earning approximately $250.00 per week. He and the other four children occupied a four room house. Plaintiff stated that the house had two bedrooms, a kitchen and living room. The three girls slept in one bedroom and plaintiff and the oldest son occupied the other. The house contained no bath facilities.[1] The house was kept and meals were fixed, principally, by Evelyn, the oldest daughter, along with help from relatives who lived nearby. The children attended school regularly and the needs of the children, otherwise, were apparently adequately attended to. The grandmother lived nearby and the children spent some of their time with her.
The plaintiff exercised his visitation rights by having Preston visit with him every other weekend. He stated that Preston seemed to enjoy his visits with the older children and was reluctant to return to Mrs. Shackleford.
These are the basic facts that give rise to the issue presented herein. We approach this problem recognizing that the standard of review in custody matters gives the trial court decision great weight, to be overturned only when there is a clear abuse of discretion. Fulco v. Fulco, 254 So.2d 603 (La.1971). The only object in custody cases is to determine the best interest of the child. LSA-C.C. art. 157.
The courts of this state have consistently followed the general rule that where a mother has recently lived in open and public adultery with her paramour for a substantial period of time, in total disregard of the moral principles of our society, the mother is morally unfit to maintain custody of her children. Beck v. Beck, 341 So.2d 580 (La.App. 2nd Cir. 1977); Johnson v. Johnson, 268 So.2d 114 (La.App. 3rd Cir. 1972); Kaufman v. Kaufman, 271 So.2d 629 (La.App. 1st Cir. 1972).
The above rule has been tempered, however, by the Supreme Court with its adoption of the "reformation" rule. The "reformation" rule was first adopted in the case of Fulco, supra. In Fulco, after the rule for a change of custody was filed, the mother terminated her adulterous relationship and was living with her parents at the time of the trial of the rule. The Supreme Court held that, due to the mother's reformation from any previous course of open indiscretion and probable immorality, the custody of the children could be retained by the mother.
The "reformation" rule is further illustrated by the case of Monsour v. Monsour, 347 So.2d 203 (La.1977), in which the mother *828 had been living in open adultery for a period of four months at the time that the father filed the rule to change custody. The mother married the man with whom the relationship had been carried out. This marriage took place before the custody trial. The Supreme Court reinstated the trial court's decision which held that the mother had reformed, was leading a stable life and was suited for custody.
Another illustration of the judicial attitude toward this subject matter is illustrated by the very recent case of Cleeton v. Cleeton, 383 So.2d 1231 (La., 1980). The mother and father separated. After separation, the mother began seeing a married man named Dave Breedlove. During the period of November 1977 to April 1978, Breedlove spent one night a week with Mrs. Cleeton in her apartment. The three daughters, 17, 12, and 9 years of age, also lived in the apartment. Mrs. Cleeton occupied a bedroom on the ground floor and the children slept upstairs. When Breedlove spent the night, he usually left before the children awakened. When suit was filed for change of custody, Mrs. Cleeton terminated the open association with Breedlove.
The Supreme Court held that this was not a relationship that amounted to concubinage or the cohabitation of persons not legally married. The relationship was deemed adulterous but discreet. The court granted the custody to the mother.
Another important case which must be noted is the recent case of Atteberry v. Atteberry, 379 So.2d 18 (La.App. 3rd Cir. 1979), writ granted, 381 So.2d 1231 (La. 1980). The general rule was tempered further by the Supreme Court in this case.
In Atteberry, it was established that Mrs. Atteberry had lived in open adultery with Warner "Sonny" Manning from January 1978 until the time of trial in August 1978. The two children were living with the mother during this time. At the trial of the custody matter, the testimony of Mrs. Atteberry and Manning was that they intended to get married at a future time.
This court held that the mother was so morally unfit that the custody of the two children could not be awarded to her. This court found that the best interest of the children required that custody be awarded to the father. A writ was granted by the Supreme Court and the case was:
"... remanded to trial court to determine whether best interest of children required granting custody of children to mother or father."
The remand of the Supreme Court did not elaborate on the reasons for the remand but in view of the prior jurisprudence we are left with the impression that the court felt that the intended marriage may have been consummated, thereby giving the trial judge an opportunity to consider the case in light of the "reformation" rule.
In the case at hand, we have a situation of Mrs. Shackleford living in open concubinage with Gunter. She has been doing so since October 1978. She had a child by Gunter in October 1979. Preston, the nine year old boy, had lived with them during this time and was aware of their status. Such continuing, notorious, adulterous conduct, without reformation, cannot be condoned by the court by awarding custody to the mother. We hold that such conduct, without reformation, is so detrimental to the welfare of the child that he should be removed from the custody of the mother.
In view of the remand of the Supreme Court in Atteberry, supra, however, and the fact that Mrs. Shackleford and Gunter both testified that they intended to get married, we conclude that the custody portion of this case should be remanded to the trial court for a new trial, to determine whether the best interest of the child required granting custody to the mother or father.
For these reasons, the judgment appealed is reversed and set aside. This case is remanded to the district court for a new trial on the issue of custody of the child and the views expressed herein. All costs of this appeal are to be paid by defendant-appellee.
REVERSED; SET ASIDE AND REMANDED.
NOTES
[1] The brief of appellant states that this deficiency has been remedied since the hearing. This is not in the record and cannot be considered by this court.