YELVERTON, Judge.
Cleveland Paul Vincent appeals from the dismissal of his rule seeking custody of his two and a half year old child, Cody Allen Vincent.
Cleveland and Delores Vincent were married in 1978. In July of 1981 the trial court awarded a judgment of separation on the ground of mutual fault and granted the wife uncontested permanent custody of Cody. In February of 1982 the father filed a rule to change custody. That rule, the subject of the present appeal, was tried and dismissed on March 3, 1982.
The basic facts are not in dispute. At the time of the hearing Mrs. Vincent was engaged in an adulterous relationship with Donald Dugas. Both Mrs. Vincent and Du-gas testified that they were living together in a three bedroom apartment in an area known as “the projects” in Lake Arthur. Both testified that they slept together and engaged in sexual intercourse. Further testimony revealed that Cody slept in the same room with the couple, but the couple testified they made sure the child was asleep before engaging in any sexual activity. Mrs. Vincent stated that she did not think her relationship with Dugas was improper. Mr. Dugas stated that they had never discussed marriage but that he “guessed” they would marry when the time was right.
The record reveals that Mrs. Vincent has had a drinking problem which has caused her some difficulties with the law. In the summer of 1981 she attempted to take Cody into a local bar but was told to leave. In September of that year she was arrested for simple drunk and disturbing the peace. In November she was arrested for slashing a tire at a local bar. She testified that she was intoxicated at the time and that the child Cody was present. She was subsequently ordered by the criminal court to *1335 seek psychiatric help. Mrs. Vincent testified that she has sought treatment at Central Louisiana Hospital and the Mental Health Clinic in Lake Charles. She further testified that she now has her drinking problem under control.
As to Mr. Vincent’s circumstances, at the time of the hearing he was employed by International Mooring & Marine and worked offshore on a seven days on and seven days off shift. He was living in an apartment in Lake Arthur. However, he testified that if he were awarded custody of Cody he intended to reside with his mother and seek a regular land-based job. The paternal grandmother resides in Cameron Parish in a four bedroom house. She is 45 years old and has raised seven children; the youngest of whom (a 14 year old daughter) still resides with her. She testified that she is in full agreement with her son’s plans to move in with her. Mr. Vincent testified that when he has had visitation with Cody he has regularly taken him to the boy’s paternal grandmother’s home. The latter stated that her son does not drink around his child on these visits and has acted “wonderful”.
Other evidence regarding Mr. Vincent’s fitness as a father included testimony that he has also been seen in local bars in the Lake Arthur area. A month before the change of custody heai’ing he struck a man in the bathroom of the Nitecap Lounge. Mr. Vincent testified he did it because the man was smoking marijuana and refused to leave. Although the police investigated, Mr. Vincent was not arrested as a result of this incident. In November or December of 1981 he was engaged in a truck race with a friend, and got a ticket. The child was not with him on this occasion. There was some evidence that he had once taken Cody along on a trapping trip while the child had an ear infection.
The first issue presented on this appeal is whether the trial court erred as a matter of law in applying the “double burden” rule in determining whether a change of custody was warranted under the facts. In his reasons for judgment allowing the mother to retain custody, the trial court, relying on James v. Spears, 372 So.2d 617 (La.App. 1 Cir.1979) and Doyle v. Doyle, 371 So.2d 344 (La.App. 4 Cir.1979), applied the double burden standard. The trial court held the father to the burden of proving not only that the existing circumstances were harmful to the physical or moral welfare of the child, but also that the father could provide better and more advantageous living conditions. The trial court did not come to any firm conclusion as to whether the father had carried his burden of proof regarding whether conditions in the mother’s custody were deleterious to the child’s welfare. However, the trial court concluded that the father had failed in his burden of proving that a change of custody could provide a better environment. The rule was dismissed for this reason.
The rigid and inflexible “double burden” of proof in change of custody cases has been overruled statutorily and jurispruden-tially. La.C.C. Art. 157 and Bordelon v. Bordelon, 381 So.2d 871 (La.App. 3 Cir. 1980); affirmed, 390 So.2d 1325 (La.1980). Louisiana law now requires simply that custody, including a change of custody, be granted in accordance with “the best interest of the child”. La.C.C. Art. 157.[1]
Since the trial court committed error of law in holding the father to an incor *1336 rect standard of proof, and since his decision herein was based upon the failure to meet that standard, the trial court’s decision to leave the child in the mother’s custody is not entitled to the great weight normally accorded custody decisions on appellate review. The legal error deprives the judgment of the presumption of factual correctness it would otherwise possess. Ragas v. Argonaut Southwest Insurance Co., 388 So.2d 707 (La.1980). Under these circumstances where the record is complete and no purpose can be served by a remand, it is our responsibility to review the whole record and render judgment. Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975). Our responsibility in the present case is to make a determination of custody in accordance with the best interest of the child.
Based on our review of the record, our general assessment of the parental credits possessed by these parties is that neither of them is a model parent. We agree with the trial court that as far as material values are concerned the circumstances of the child will not be improved by changing custody to the father. However, we consider that the immoral influence to which the child is exposed in the mother’s custody, demonstrated not only by the fact that the mother has continued to live in an open and public adulterous cohabitation with her paramour, but also by the mother’s attitude that there is nothing wrong with her conduct, is such a serious and damaging influence on the proper upbringing of the child that the mother should be declared unfit and custody changed to the father.
Louisiana courts have always adhered to the belief that a child learns by example from parents and that a parent’s utter disregard for moral guidance and social standards is certain to affect a child adversely. Applying this principle, the courts have consistently held that where a mother lives in open and public adultery with her paramour in total disregard of the moral principles of our society, she is morally unfit to maintain custody of her children. Shackleford v. Shackleford, 389 So.2d 825 (La.App. 3 Cir.1980). The Shackleford court observed, however, that our Supreme Court has tempered this general rule with its adoption of the “reformation rule”, citing Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971); Monsour v. Monsour, 347 So.2d 203 (La. 1977), and Atteberry v. Atteberry, 379 So.2d 18 (La.App, 3 Cir.1979), writ granted, 381 So.2d 1231 (La.1980).[2] The “reformation rule” means simply that if the parent has reformed — changed a prior course of immoral conduct and attitudes to such an extent that the deleterious influence no longer exists — the parent is not unfit.
A case more recent than those cited above is Bonner v. Bonner, 408 So.2d 995 (La.App. 2 Cir.1981). It involved a factual situation not unlike the instant facts. The child was two and a half years old. The mother began an adulterous affair before the marriage broke up. Subsequently the couple and the child moved into the apartment. This arrangement continued for about six weeks until five days before the trial, when the paramour moved out in order to avoid prejudicing the mother’s chances of retaining custody. The couple testified that they had discussed the possibility of getting married once their divorces were final. The mother testified that she saw nothing wrong with living with her paramour but stated that in the future she would not allow him to remain overnight in the apartment. The trial court found the mother morally unfit and awarded custody *1337 to the father. The Second Circuit determined that the trial court did not abuse its discretion considering the mother’s attitude about her conduct. The court stated that “a child learns by example, and a mother’s disregard for moral guidance and social standards can but harm the child”, and noted that “the mother’s conduct discloses no basis to believe she has truly reformed and would give good moral guidance to her young daughter in the future”.
The latest case on the subject is Bagents v. Bagents, 419 So.2d 460 (La.1982) (No. 82-C-0183, September 7, 1982). There the mother in custody of a five year old child was living with another man in an apartment. A week before trial of the rule brought by the father to change custody, the mother moved out on the advice of counsel to help her case. She testified at the trial of the rule that she saw nothing wrong with her conduct. Based on the mother’s overall character and fitness, the trial judge granted a change of custody. The mother then immediately married her paramour and moved for a new trial. The trial judge refused to recall the change of custody because the marriage did not represent a change in the mother’s moral values or a desire to reform. The court of appeal affirmed, 408 So.2d 393 (La.App. 1 Cir.1981). The Supreme Court granted writs then affirmed being unable to say that the trial court erred as a matter of law in deciding that a change of custody was in the child’s best interests. Although the majority of the court affirmed the decision of the trial court and the court of appeal on the technical basis that there was no manifest error, it was explicit in the decision of the majority that the principles recited in the Shackleford case, supra, are still the law.
In the present case we have the facts of a mother living in open and public adultery with another man and the two and a half year old child sleeps in the same bedroom with them. This conduct was being carried on at the time of the trial of the rule to change custody. The mother testified that she sees nothing wrong with the relationship. The subject of her marriage to her paramour has not even been discussed. Thus here we have not only a continuation of the open and public immoral relationship in the very presence of the child, but the mother also indicates that she has no intent or desire to reform. Clearly, it is in the best interests of this child that it be removed from its mother’s custody.
For these reasons, the judgment of the trial court is reversed and judgment is rendered granting custody of Cody Allen Vincent to his father, Cleveland Paul Vincent, subject to reasonable rights of visitation with the mother, Delores Vincent. Judgment is further rendered that the award of child support to the mother is hereby terminated upon final judgment of this decision. All costs, at trial and on appeal, are assessed against appellee, Delores Vincent.
REVERSED and RENDERED.
DOMENGEAUX, J., concurs in the result.

. La.C.C. Art. 157 states in pertinent part:
“Art. 157 Custody and tutorship of children; visitation rights of grandparents
“A. In all cases of separation and divorce, and change of custody after an original award, permanent custody of the child or children shall be granted to the husband or the wife, or to both jointly by agreement of both the husband and wife, in accordance with the best interest of the child or children; however, an award of joint custody may be granted only when the husband and wife are both domiciled in the state of Louisiana. If either parent changes his or her domicile to another state, the other may petition for sole custody. No preference shall be given on the basis of the sex of the parent in cases where custody is awarded to only one parent. Such custody hearing may be held in private chambers of the judge.”

. In Fulco, the mother had terminated her adulterous relationship and was living with her parents at the time of the trial of the rule to change custody. In Monsour, at the time of trial of the rule to change custody the mother had married the man with whom she had formerly had an immoral relationship. The Supreme Court found in both these cases that the mother had reformed and was no longer morally unfit. In Atteberry, the Supreme Court remanded to the trial court for a determination of whether the mother and her paramour had married (there was evidence at the trial of the rule to change custody that they intended to marry), so that the trial judge could consider the case in light of the reformation rule.