CHIASSON, Judge.
Writs of Mandamus, Prohibition and Cer-tiorari and a Stay Order were issued herein to enable this court to review, without the delays generally associated with an appeal, a change of custody order rendered by the trial court.
*236 Relatrix, Lindle D. Mobley, obtained a legal separation from her husband, Jim W. Mobley, respondent, on October 12, 1979. This judgment also awarded to relatrix the permanent care, custody and control of the two minor daughters born of the marriage. On July 22,1980, respondent filed a petition for divorce on the ground of adultery and for custody of the two minor children. The trial court ordered that the custody of the children be given to their father. We granted the writs and the stay order to review that ruling.
The record reveals that Mrs. Mobley is pregnant with another man’s child. The father of the unborn child is a married man still living with his wife. The two daughters, ages 14 and 9 years, have seen their mother sit on her paramour’s lap, embrace and kiss him.
Mrs. Mobley’s past conduct consisting of her religious activities which interfered with the performance of her motherly duties, of her unexplained misuse of credit cards, and of her relationship with another married man, were all reasons given by the trial judge for his finding that the continued custody by Mrs. Mobley would be detrimental to the welfare of the young girls.
The two specifications of error raised by the relatrix involve essentially the same question, whether the trial court properly applied the ruling of a recent Supreme Court case on rehearing, Cleeton v. Cleeton, 383 So.2d 1231 (La.1979).
The iCourt in the Cleeton case referred to a showing of a detrimental effect on the children from the mother’s conduct before a change of custody should be granted. Therein the Supreme Court stated:
“To change the custody of these girls would punish their mother for past behavior when there is no proof of a detrimental effect on her daughters. An award of custody is not a tool to regulate human behavior. The only object is the best interest of the child. LSA-C.C. art. 157....” (Cleeton, supra, page 1236).
Another recent Supreme Court case sheds light on the conduct displayed by Mrs. Mob-ley in the instant suit. In Schexnayder v. Schexnayder, 371 So.2d 769 (La.1979), the Court stated:
“We acknowledge that the evidence indicates that the respondent did not engage in any sexual activity with her paramour in front of the children. While the existence of such conduct would certainly be relevant in our determination here, the lack of its occurrence does not end our inquiry. We believe that the flagrant disregard for established moral principles demonstrated by the respondent, her insensitivity to any embarrassment or injuries her conduct might inflict on her family, and her willingness to abandon motherly and wifely responsibilities in order to pursue extramarital sexual activities all combine to demonstrate that the respondent is ‘morally unfit or otherwise unsuitable’ to have custody of the children.”
In both cases, the effect on the “family” or the “children” of the mother’s conduct played a substantial role in the court’s ruling. This was explained in the Schexnayder decision at page 773:
“The purpose of the above jurispruden-tially established rule is not to punish the mother but to protect the children. We recognize that in many cases infrequent indiscretions may be born out of human frailty rather than an absence of moral character. In such cases, the adulterous affair will not mitigate against a person’s claim for custody. However, in cases where a person consistently and over a period of time engages in a course of open and public adultery in defiance of generally accepted moral principles in total disregard of any embarrassment and injuries which might be sustained by the children of the marriage, past misconduct forms an important consideration in determining the present suitability of a parent. * * * We believe this because common knowledge and experience teaches that a child learns by example, especially from his parents, Beck v. Beck, supra, [La.App., 341 So.2d 580] and that it is a parent’s duty to demonstrate to his or her children qualities of good moral character. Consequently, parents fail in that duty when they openly and notoriously *237 display an utter disregard for moral and social values in the area of sexual fidelity toward each other and thus forfeit the moral leadership owed their children.”
The sexual conduct in the instant litigation may not be as flagrant as it was in the Schexnayder case, but nonetheless, Mrs. Mobley is six months pregnant with another man’s child who is still living with his wife. The sexual activities of Mrs. Mobley began after her separation from her husband and continued until she discovered her pregnancy. However, she still continues to see the other man and he still visits in her home. These facts, combined with the obsession of Mrs. Mobley that everything is God’s will, are a direct contradiction and are extremely confusing to girls, ages 14 and 9, who are developing their own moral and social values.
Mrs. Mobley told her daughters about her pregnancy, admitted that what she had done is wrong, but that it was God’s will. She contends the girls have now accepted the fact of her pregnancy, and the girls are doing well in school.
The trial judge was convinced by the testimony and viewing the parties that the overall conduct of Mrs. Mobley will have a detrimental effect on the young girls. As stated in his reasons for judgment:
“Mrs. Mobley is now six months pregnant and explains to the court that she told her daughters that what she had done was wrong and contrary to her teaching but that this would help them learn about motherhood and womanhood. * * * The mother, contrarily, appeared to this court to be psychotic, influenced by religious fervor and inclined to blame everything on God’s will including some five to six thousand dollars worth of credit card expenditures which she refused to explain to her husband, always stating that the expenses were God’s will. She blames her pregnancy on God’s will. In the judgment of this court the pregnancy of a thirty-seven year old wife by a fifty-six year old man not her husband is not necessarily of God’s will and not necessarily the best way for two young girls to learn about motherhood and- sexuality.”
From the record the adultery on the part of Mrs. Mobley was readily admitted by her as well as the other adultering party, but never in front of the children. It was stated by both parties that they have contemplated marriage even though he is still married.
In addition, the record reflects that Mrs. Mobley neglected her motherly responsibilities in not looking after the children at times and in not performing the chores around the family home.
From all these factors, we agree with the trial court that the best interest of the children requires that their custody be given to the father and affirm its change of custody order.
The trial court found that the respondent, Mr. Mobley, is ably suited to care for the children at this time. He is a senior executive with South Central Bell and he has a very suitable home in New Iberia. He has been a former deacon in his church in Baton Rouge and has made elaborate plans for the care and custody of his daughters.
For the reasons assigned the writs are hereby recalled and the stay order is vacated. All costs are to be paid by relatrix.
WRITS RECALLED, STAY ORDER VACATED.