389 So.2d 454 (1980)
Kathy Newman MANLEY, Plaintiff-Appellant,
v.
Gregory H. MANLEY, Defendant-Appellee.
No. 14315.
Court of Appeal of Louisiana, Second Circuit.
September 22, 1980.
Rehearing Denied October 30, 1980.[*]
Writ Refused December 15, 1980.
Blackwell, Chambliss, Hobbs & Henry by James A. Hobbs, West Monroe, for plaintiff-appellant.
Bruscato & Loomis by Anthony J. Bruscato, Monroe, for defendant-appellee.
Before PRICE, HALL and MARVIN, JJ.
En Banc. Rehearing Denied October 30, 1980.[*]
HALL, Judge.
This case concerns the custody of three and one-half-year-old Melissa Marie Manley, daughter of the plaintiff-mother and defendant-father. Mrs. Manley was awarded custody of Melissa after the Manleys separated in 1978. In 1979 Mrs. Manley filed suit for divorce and asked that permanent custody of Melissa be awarded to her. The defendant-father reconvened on the custody issue, alleging that the impropriety of the mother's relationship with a male companion was detrimentally affecting the minor child. A hearing held on the custody matter resulted in a judgment removing Melissa from the plaintiff's custody and awarding permanent custody of the minor to the father. The mother perfected an appeal from the custody judgment. While this appeal was pending, a divorce judgment was rendered, with the custody judgment being continued in effect pending the appeal thereof. Plaintiff also appealed this judgment, seeking to have it amended to award her permanent custody of the child.
Both judgments are properly before this court on appeal and present for our review the issue of "permanent" custody of the child, that is, custody of the child following the divorce. We reverse and set aside the judgment on the custody rule and amend the divorce judgment to award custody of the child to the plaintiff-mother.
*455 Plaintiff and defendant were married in Ouachita Parish in January 1976. Melissa was born in September. Defendant attended college and worked while the mother remained at home to care for Melissa. Trouble developed in their marriage and in January 1978 the couple physically separated, Melissa remaining with her mother. A judgment of separation was rendered on August 23, 1978 in which custody of Melissa was awarded to the plaintiff. The defendant acquiesced in the custody award and only contested the amount of child support he would be required to pay.
Plaintiff sued for divorce in August 1979 on the grounds that one year had elapsed since the separation judgment was rendered and no reconciliation had occurred. She also sought permanent custody of Melissa and increased child support. Initially, defendant reconvened asking only that the court establish specific visitation rights. The demand was later amended to ask for custody of Melissa on the grounds that plaintiff had exposed the child to an unwholesome atmosphere caused by the continual presence of Danny Day in her home. A hearing was held on defendant's rule for a change of custody. The custody hearing focused on the relationship existing between plaintiff and Day. Although the trial court found the evidence did not establish that she and Day were having an adulterous affair or that Day was living with plaintiff, the trial court nonetheless removed Melissa from the plaintiff's care and awarded permanent custody to the father.
In giving oral reasons for its decision, the court mentioned the lack of evidence about the child's activities or about any training or tutelage she receives; the complete absence of evidence as to the day-to-day life of the child; the lack of reference to any friends of the child; the mother's failure to provide the child with formal religious guidance; plaintiff's failure to mention any activities of the child that did not include Day; plaintiff's lack of concern about the outward appearance of her relationship with Day or what other people might think; the lack of testimony about plaintiff's approach to child rearing; and the overwhelming domination of the relationship between plaintiff and Day in the child's life.
After the Manleys obtained a legal separation, the defendant, who had been working for State Farm in Monroe, was transferred to that company's El Dorado, Arkansas office. Plaintiff and Melissa remained in the Monroe area, where they live in a three-bedroom home owned by plaintiff.
Plaintiff works full-time for Rivers Ford in Monroe. While plaintiff works Melissa is cared for at a local nursery. Plaintiff spends most of her nonworking time with her daughter. Melissa spends alternate weekends with her father at his family's home in Monroe. Plaintiff generally limits time away from her daughter to those weekends.
The trial court found, and we agree, that insofar as physical arrangements or management of the child's physical needs are concerned, no appreciable difference exists in what either parent can offer Melissa.
The majority of the testimony adduced at the custody hearing concerned plaintiff's relationship with Danny Day. The two met in August 1978 and began dating in May 1979. Since August 1979 Day has been a regular visitor at the Manley home.
Plaintiff and Day both testified that Day is at plaintiff's home at least four to five nights each week. Because Day did not have a car, his brother or a friend would drop him off at the Manley home around 6:00 p. m. to 6:30 p. m. Occasionally, the plaintiff would pick him up from his job on her way home from work. Mrs. Manley, Day, and Melissa would eat dinner together, then watch television or play games. Day would usually remain at the Manley home until 11:00 p. m. to 1:00 a. m. when his brother or a friend would pick him up. Occasionally, plaintiff would drive Danny the short distance to his home, with Melissa accompanying her.
Mrs. Anita Haile and her 11-year-old-daughter, Salinda, live next door to plaintiff and her daughter. Salinda testified that on several mornings while waiting for her school bus, she had seen the plaintiff, *456 Melissa, and Day leave the Manley home in plaintiff's car. Salinda also testified that, on those mornings, she never saw Day arrive at plaintiff's home. The implication of this testimony was countered by Day's testimony to the effect that a friend of his who worked out of town would sometimes drop him off at plaintiff's house before 7:00 a. m. Day would then eat breakfast with plaintiff and Melissa and then plaintiff would drive him to town on her way to work. The plaintiff testified that Day had never remained in her house overnight.
Hearsay testimony of defendant and his mother about several remarks made by the child concerning sleeping arrangements at Mrs. Manley's house should not have been admitted over plaintiff's timely objection and is of no probative value.
The evidence adduced at the hearing establishes that Danny Day is a very frequent visitor at the Manley home. However, the evidence does not establish that Day was living with the plaintiff; nor does it establish that the two were engaged in an adulterous relationship. The trial court so concluded and was correct in this factual conclusion. This is not a case like Schexnayder v. Schexnayder, 371 So.2d 769 (La.1979) where the mother, while still married, neglected the needs of her young children in order to engage in a notorious affair with her lover, himself a married man. Nor is this a case where the mother lives with her boyfriend, thus exposing her child to an immoral lifestyle.
The evidence in the record does not establish that the relationship between Day and plaintiff is harmful to Melissa. Nonetheless, the trial court felt that the frequency of Day's visits to the Manley home was improper and that Melissa must be confused by his continued presence. There is no evidence of any detrimental effect suffered by Melissa; there is no evidence that the child was confused or disoriented because of his presence. Rather, the evidence indicates that Melissa likes Day and is comfortable with him. Further, the evidence shows that Day spends time with Melissa playing games with her, reading to her, and the like. No evidence of ill effects, physical or moral, was presented.
The trial court emphasized the lack of affirmative evidence about the child's day-to-day activities, guidance, and training. These matters were not directly placed at issue by the pleadings or in the trial, defendant's evidence being devoted almost exclusively to whether Day was spending the night at plaintiff's house. The evidence does affirmatively show, however, that plaintiff was with and attending to the child about as much as a working mother could be.
As was established in Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971) and reiterated in the recent case of Cleeton v. Cleeton, 383 So.2d 1231 (La.1980), on review of child custody matters the decision of the trial judge is to be given great weight and such decision is not to be overturned in the absence of a clear showing of abuse of discretion. In the instant case we hold the trial court clearly abused its discretion in removing a small child from the custody and care of her mother, who has cared for her constantly since birth, when there was no proof that the mother was providing an unwholesome atmosphere for the child, no proof that the child was exposed to an immoral relationship, no proof of any detrimental effect on the child, and no proof of neglect of the child.
In Bankston v. Bankston, 355 So.2d 59 (La.App. 2d Cir. 1978), writ denied 357 So.2d 1153 (1978), this court held that once custody has been awarded to one parent who provides a reasonably stable and secure environment for the child, custody should not be changed unless there are good and substantial reasons to justify the change. See also Languirand v. Languirand, 350 So.2d 973 (La.App. 2d Cir. 1977), writ denied 352 So.2d 236 (1977). The fact that the mother has a steady boyfriend who frequents her home is not sufficient reason to justify a change in custody in the absence of proof that the mother's relationship with the boyfriend is having a detrimental effect on the child.
*457 Plaintiff has been the sole custodian of Melissa since January 1978. There is no indication in the record that Melissa is anything other than a well-adjusted, well-cared for, and happy three and one-half year old. Because the evidence does not establish that the mother has engaged in any misconduct, or that any conduct on her part has had an adverse effect on the child, a change in custody is unwarranted. The best interest of the child, which is always the paramount consideration, LSA-C.C. Art. 157, is, in this case, best served by stability of environment and by continuing custody with her mother, who has cared for her since birth.
In view of the trial court's award of custody to the defendant, that court did not consider the matters of child support and visitation rights raised by the pleadings. We will remand the case for trial of those issues, but will order continuation of the support and visitation provisions contained in the separation judgment pending trial and determination of those issues.
The judgment of the district court on the custody rule is reversed and set aside and judgment is rendered in favor of plaintiff and against defendant rejecting defendant's demand for a change in custody. The divorce judgment is modified to award permanent custody of Melissa Marie Manley to Kathy Newman Manley, the plaintiff. The case is remanded for trial and determination of the issues of child support and visitation rights. Pending such trial and determination, defendant shall have reasonable visitation privileges and shall pay to plaintiff $100 per month as child support, commencing with the effective date of this judgment. Costs of these proceedings, including the costs of appeal are assessed to the defendant-appellee.
Reversed, rendered, and remanded.
NOTES
[*] Jasper E. Jones, J., recused.