JASPER E. JONES, Judge.
Rhonda Bonner appeals a judgment awarding her husband, Thomas Bonner, custody of their two and one-half year old daughter who had initially been awarded to appellant in January, 1981 in an uncontested separation judgment. We affirm.
Rhonda Bonner is a licensed practical nurse. She was unemployed at the time of trial. Rhonda supported herself and daughter, Krystal, with income from unemployment insurance, child support and her “boyfriend.”
Rhonda and Krystal resided in the Centennial Apartments in Bastrop, Louisiana. Rhonda spent quite a bit of time with Krystal and sometimes took the little girl to the zoo or movies or to get ice cream, all of which were greatly enjoyed by Krystal. The primary play area at the Centennial was a parking lot where Krystal played along with many other children who lived in the complex. There is testimony that while Krystal lived with her mother she was well cared for, happy and well adjusted.
Thomas Bonner is employed at a paper mill in Bastrop where he works from 8:00 a. m. until 4:30 p. m. Thomas owns a home in Bastrop, as do his parents. Mr. Bonner’s parents would assist him by caring for Krystal while he is at work.
While Rhonda had custody of Krystal she would spend weekends with Thomas. Thomas did not often take Krystal out for activities during those visits. Thomas and Krystal spent much time watching television. They would also visit Krystal’s paternal grandparents and attended church regularly with them on Sundays.
Most of the record and excellent briefs in this case concern the extra-marital sex activity of this 24 year old couple. Thomas was the first to experiment with adultery.
In May 1980, Thomas had a brief affair with a co-employee at a nursing home where he was working. Both Thomas and bis co-employee were unhappy and their initial relationship was to discuss their problems and commiserate with each other. Unfortunately, their relationship took a sinister turn and the pair met at a house trailer on three different occasions for sex. The affair quickly ended when the spouses of both participants learned of it. There is no evidence that Thomas ever again ventured into infidelity.
Rhonda began her affair shortly before the marriage broke up. She took her car to a used car lot to have it repaired. There she met David Johnson, a 57 year old used car salesman. Rhonda and David fell into a discussion of their respective marital problems. Rhonda and David then began meeting, first at Mike’s Motel in Oak Grove and later at the Bastrop Motel, for sex. Apparently Rhonda was never charged for the repairs to her car.
On one of the occasions when Rhonda and David met at the Bastrop Motel they were discovered by Johnson’s wife and daughter. This encounter was accompanied by sufficient fanfare for the police to be summoned. Soon after this incident the Bon-ners separated.
Johnson then installed Rhonda and Krystal in the apartment and paid the rent on it. Johnson secured lodging for himself at the Bastrop Motel. At this point Johnson was staying overnight in the apartment with Rhonda only occasionally.
After a time Rhonda and David decided that the motel room was a needless expense and Johnson moved into the apartment *997 with Rhonda and Krystal. David and Rhonda slept in one bedroom and Krystal slept in the other. This arrangement continued for about six weeks, until five days before the trial, when Johnson moved out in order to avoid prejudicing Rhonda’s chances of retaining custody.[1] The relationship between Rhonda and David is a continuing one and they have discussed the possibility of getting married once their divorces are final. Rhonda testified that in the future she would not allow David to remain overnight in the apartment.
Rhonda’s attitude about the situation is best shown by her testimony:
“Q. What led up to the decision for Dave [Johnson] to actually move into the apartment with you and Crystal? (sic) [Krystal].
A. We just talked about it and he just decided he would move in because he was paying so much rent for the motel room.
Q. Okay. Did you feel like that this was good example to set for Crystal (sic), having a live in boy friend?
A. I don’t think it’s hurt Crystal (sic) at all.
Q. Well, Ma’am in .. . would you recommend this to everyone that has small daughters?
A. Well, I can’t tell anyone what to do -uh as far as my child is concerned and my situation I can’t see where it has hurt my little girl at all.
Q. Would you agree, ma’am, that people generally feel that it is immoral to have a live in boy friend when you have a living husband?
A. Some people might. Not as many now as use to would though.
Q. Yes ma’am. I would agree with you that people’s opinion do change. You do not feel that it is immoral yourself?
A. No sir.
Q. I see. Because you feel this way, you would pass on your beliefs I take it to your daughter?
A. If that’s what she wanted to do.
Q. Well, you would have to teach your daughter what you believe is right; otherwise, you wouldn’t be true would you?
A. No sir.” [Tr. 79-80]
The trial judge found Rhonda morally unfit for the custody of a young female child and awarded custody to Mr. Bonner. On appeal Mrs. Bonner makes only one assignment of error: the finding that she is morally unfit for custody.
Custody is not awarded on the basis of which parent buys the child the most ice cream cones or who has the nicest house. The award of custody is to be made in accord with the best interest of the child. LSA-C.C. art. 157;[2] Messner v. Messner, 240 La. 252, 122 So.2d 90 (1960); Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971); Monsour v. Monsour, 347 So.2d 203 (La.1977). The trial judge, who saw and heard *998 the witnesses, determined that it would be in the best interest of Krystal to be in the custody of her father due to her mother’s moral unfitness. It is not our province to substitute our judgment for that of the trial judge. In custody matters the trial judge’s determination must be given great weight and his discretion may not be disturbed in absence of clear abuse. Fulco; Monsour, supra; Coltharp v. Coltharp, 368 So.2d 793 (La.App.2d Cir.1979), writs denied 370 So.2d 578 (La.1979); Schexnayder v. Schexnayder, 371 So.2d 769 (La.1979); Cleeton v. Cleeton, 383 So.2d 1231 (La.1980); Ferguson v. Ferguson, 398 So.2d 1238 (La.App.4th Cir.1981); Shackleford v. Shackleford, 389 So.2d 825 (La.App.3d Cir.1980). Thus, our inquiry is: was there a clear abuse of discretion by the district judge in his award of custody?
Though it is usually in the best interest of a young child to be in the custody of its mother, that is not the case when the mother is morally unfit. Parker v. Parker, 304 So.2d 681 (La.App.3d Cir.1974); writs denied 307 So.2d 641 (La.1975). With this in mind we turn to the trial judge’s conclusion that Rhonda Bonner is morally unfit.
That a mother has committed one or more acts of adultery with the same person does not alone show that she is morally unfit. Cleeton; Parker, supra. However, a course of open and public adultery in disregard of generally accepted moral principles is generally considered to make a mother unfit. Beck v. Beck, 341 So.2d 580 (La. App.2d Cir.1977); Parker, supra; McCurdy v. McCurdy, 369 So.2d 1216 (La.App.2d Cir.1979); Hildebrand v. Hildebrand, 391 So.2d 577 (La.App.4th Cir.1980), writ denied 396 So.2d 922 (La.1981).
The record shows that Mrs. Bonner, during her marriage, began an affair with a married man who was thirty-three years her senior. Rhonda admitted that she met that man at various motels for the purpose of committing adultery. This affair was exposed in an incident so ostentatious that the police were called.
Following those events Rhonda Bonner became what the trial judge aptly described as a “kept woman” and lived with Krystal in an apartment paid for by her lover, who also provided her with other items. Mrs. Bonner then had her lover move in and live with her and Krystal. That was discontinued only five days before, and for the sole purpose of the trial of this matter.
The testimony of Rhonda Bonner makes it clear that she sees nothing wrong with her conduct. She would apparently approve should Krystal someday pursue a similar lifestyle.
The only redeeming factors Mrs. Bonner can call on are that she had Johnson move out and testified that he would not stay overnight in the future. There is slight evidence that Mrs. Bonner may have paid one month’s rent on the apartment.
We recognize that in today’s society conduct that would once have been scandalous is acceptable or, perhaps, even the norm. However, we do not believe that even today’s more permissive society accepts or condones conduct of the nature engaged in by Mrs. Bonner. In view of that and Mrs. Bonner’s attitudes about her conduct, we cannot conclude that the trial judge committed any abuse of discretion in determining that she is morally unfit for the custody of Krystal. As we pointed out in Beck, supra, a child learns by example and a mother’s disregard for moral guidance and social standards can but harm the child. We note that here, as in Beck, the mother’s conduct discloses no basis to believe she has truly reformed and would give good moral guidance to her young daughter in the future.
The judgment is AFFIRMED at appellant’s cost.

. The testimony of David Johnson was as follows:
“Q. The motivating fact of your moving out was this pending litigation?
A. Yes.” [Tr. p. 10]
Mrs. Bonner testified:
“Q. If you feel that it nothing wrong with your occupying this apartment with Mr. Johnson as husband and wife as you have done, — uh why did you require Dave to move out last Wednesday?
A. Because of this custody case and if it meant either David staying or going, I just told him he would have to go if it meant keeping my little girl or not.” [Tr. p. 80]

. C.C. art. 157 — A. In all cases of separation and divorce, and changes of custody after an original award, permanent custody of the child or children shall be granted to the husband or the wife, in accordance with the best interest of the child or children, without any preference being given on the basis of the sex of the parent. Such custody hearing may be held in private chambers of the judge. The party under whose care the child or children is placed, or to whose care the child or children has been entrusted, shall of right become natural tutor or tutrix of said child or children to the same extent and with the same effect as if the other party had died.
B. If subsequent to the granting of a divorce or separation one of the parties to the marriage dies and is survived by a minor child or children of the marriage, the parents of such deceased party may have reasonable visitation rights to the child or children of the marriage during their minority, if the court in its discretion finds that such visitation rights would be in the best interests of the child or children.