JASPER E. JONES, Judge.
In this case Marie Leckie appeals from a judgment granting her husband, Henry Leckie, a divorce and custody of their youngest daughter, Carla, who was five at the time of the trial. Appellant contests only the award of custody. We affirm.
The parties separated in March, 1980 when the wife left the matrimonial domicile of seven years located at Louisiana State Penitentiary at Angola, Louisiana. The husband obtained physical custody of Carla about two weeks after the separation and retained it until the wife clandestinely removed the child from kindergarten in October, 1980 and simultaneously filed a suit for separation and with it obtained a temporary custody order giving her custody of Carla.
Henry Leckie is employed at the Louisiana State Penitentiary as a truck driver in the agricultural portion of the prison activities and is required to make trips around the state. Henry is home every night, though occasionally he does not get home until late when he is required to make trips to distant areas.
*270 Henry resides in a house located on the prison grounds. Pamela Leckie, Henry’s older daughter who is also employed at the prison, lives nearby and testified she would move back in with her father and assist him in caring for Carla. Pamela had assisted her father in caring for Carla between March and October when he had the physical custody of the child. Henry testified he had contacted prospective sitters to care for Carla when neither he nor Pamela is available.
When Carla was with her father she often slept with him or her half sister, Pamela. However, there is not the slightest indication of any sexual impropriety.
Marie Leckie was unemployed at the time of trial and had no income of her own. She resided near Columbia in Caldwell Parish where she lived in a house trailer with William White. Marie is supported by White. This living arrangement had existed for at least six months at the time of the trial in June of 1981. Marie testified that she and White were planning to marry.
White is employed as a pilot on the Mississippi River. His work causes him to be away from home much of the time. Marie admitted that White, who did not testify, has a drinking problem. She testified he drank almost every day and that she had seen him consume as much as a fifth in one day.
When Marie left Angola she took Carla with her and Henry came to Caldwell Parish to retrieve the child. Marie testified at that time Henry menaced her with a .357 magnum pistol and threatened to kill Carla and himself if she commenced proceedings to gain custody of the child. Henry admitted that he had a pistol in his car when he got Carla but said that was a very common practice among prison employees. He denied menacing Marie or making any threats.
Approximately six months later Marie got Carla back by going to Angola and removing her from school without her father’s knowledge.
After getting Carla, Marie returned to Caldwell Parish and filed an action for separation and permanent custody of Carla. She obtained an order granting her temporary custody. Henry answered and reconvened for a divorce on grounds of adultery and custody of Carla. After a trial on the merits the district judge rendered judgment in favor of Henry granting the divorce and awarding him custody of Carla. Marie then took this appeal.
Marie urges three assignments of error: (1) that the trial court erred in finding the environment she provided was detrimental, (2) that the trial court erred in using its award of custody to punish her for her relationship with White, and (3) that the trial court erred in failing to consider the environment offered by appellee in making the award of custody.
We shall begin by considering assignments one and three together since they both address the trial court’s determination that it was in Carla’s best interest to be in the custody of her father.
The basic principle involved in custody cases is that the award is to be made in accord with the best interests of the child. LSA-C.C. art. 157; Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971); Cleeton v. Cleeton, 383 So.2d 1231 (La.1980).
In our review of a custody award we are guided by the principles that the trial judge is in the best position to determine the best interests of the child, that his determinations must be given great weight and that they may not be disturbed in the absence of clear abuse. Traylor v. Traylor, 388 So.2d 70 (La.App. 1st Cir. 1980); Fulco, supra; Monsour v. Monsour, 347 So.2d 203 (La.1977); Schexnayder v. Schexnayder, 371 So.2d 769 (La.1979).
This case is typical of many custody cases in that the trial judge was presented with two parents who both love their child and would try to care for her. Here neither parent could provide an ideal environment and the trial judge was left to choose between two imperfect alternatives, the one that would be in Carla’s best interest.
*271 The primary flaw in the environment provided by Henry is that since he works he will have to rely on Carla’s sister, Pamela, and hire sitters for assistance in caring for the child while he works. We note that this problem would not be present if Marie had been awarded custody since she is not employed outside the home.
Appellant contends that Henry’s action of permitting Carla to sleep with him is detrimental to her in that it may tend to foster an unnatural dependency. Carla is required to sleep in her own bed when she is with her mother. Henry testified that he would encourage Carla to sleep in her own bed in the future.
Appellant’s contention that Henry’s motive in seeking custody is to ensure that he can retain the house, rather than being required to move to the batchelor quarters at the Penitentiary, is not supported by the evidence. Henry freely acknowledged that he would lose the house if he were not awarded custody, but there is no other evidence supporting appellant’s contention. The trial judge obviously did not give credence to this contention and we see no error in his failure to do so.
There are two serious flaws in the environment provided by Marie. First is the nature of her relationship with White. Marie and White live together in open concubinage. Her relationship with White provided Henry with the grounds to obtain a divorce on grounds of adultery. Marie is dependent on and is supported by White.
Appellant contends that her relationship with White, because of his frequent absence, is much like the one considered by this court in Manley v. Manley, 389 So.2d 454 (La.App. 2d Cir. 1980), and not detrimental to young Carla. We disagree.
In Manley this court reviewed a judgment which changed custody of a three and one-half year old girl from her mother to her father. The district court changed custody because of the mother’s relationship with a suitor. Though the suitor was a frequent visitor in the mother’s home, they were not living together and their relationship was not shown to be adulterous.
The facts of this case are in stark contrast to Manley. Marie is admittedly living with White and their relationship has been proven to be adulterous. The fact that White’s work requires him to be away does not purge the nature of the relationship. White is far more than the steady boyfriend involved in Manley. We find Manley inap-posite.
The nature of the relationship here is more like the relationships considered in Beck v. Beck, 341 So.2d 580 (La.App. 2d Cir. 1977); McCurdy v. McCurdy, 369 So.2d 1216 (La.App. 2d Cir. 1979), and Bonner v. Bonner, 408 So.2d 995 (La.App. 2d Cir. 1981).
In Beck this court affirmed a judgment changing custody from the mother to the father where the mother of a seven year old boy had begun living in open concubinage.
McCurdy involved the mother of four and eight year old boys who left the matrimonial domicile and began living with a male acquaintance. There this court affirmed a judgment awarding custody to the father.
In Bonner we affirmed a judgment awarding custody of a two and one-half year old girl to her father in a case where the mother left her husband and began living with her paramour.
A child learns by example and a mother’s disregard for moral guidance and social standards can but harm the child. Beck; Bonner, supra. Marie’s relationship with White can but harm Carla.
The second serioús concern in the environment provided by appellant is the child’s exposure to White’s drinking problem. Exposure to drinking problems has been recognized as being detrimental to a child. Davis v. Willis, 169 La. 13, 124 So. 129 (1929).
Appellant contends that White’s drinking problem is insignificant since he is often away from home and Carla would be exposed to it only a few days each month. We think this argument flies in the face of reality. Repeated exposure, even for relatively short periods of time, of a child of *272 this age to the problem of alcohol abuse would be detrimental.[1]
We find no abuse of discretion in the district judge’s determination that it would be in the best interests of Carla to be in the custody of her father. Assignments one and three are without merit. We now turn to assignment number two.
Appellant assigns as error the trial judge’s attempt to punish her for her relationship with White through the custody award and cites Cleeton, supra.
The rule of Cleeton is that custody awards may not be used as a tool to regulate behavior and that a parent may not be deprived of custody because of conduct which is not detrimental to the child or children. As explained hereinabove the award of custody in this case is based on factors present in the environment provided by Marie which are detrimental to the child. Thus the award of custody to Henry does not violate the rationale of Cleeton.
Further, the facts of this case are readily distinguishable from the ones in Cleeton on which the supreme court concluded that the mother was being denied custody because of conduct not detrimental to the children. There Mrs. Cleeton and her paramour, Dave Breedlove, were not living together. Breedlove maintained a separate residence and stayed overnight only occasionally.
Here Marie and White are living together. Each has only one residence, the trailer where they live. Appellant is supported by White. Their relationship is not discreet; it is one of open concubinage. Also, in the instant case there is the added element of exposing the child to White’s drinking problem. This relationship is much more detrimental than the one considered in Cleeton.
The judgment of the trial court is not an impermissible use of a custody award to punish appellant. This assignment of error is without merit.
The judgment appealed from is AFFIRMED. All costs are taxed against appellant.

. We do not hold or imply that a person may be deprived of custody on grounds that the environment provided by him will expose the child to a person [or persons] that drinks. We hold only that an environment which will often expose a child to a person [or persons] with a drinking problem is detrimental to that child.