CUTRER, Judge.
This is a child custody case. The trial judge awarded custody of Judd Granger, age 12, Monique Granger, age 10 and Char-isse Granger, age 7, to their father, Glynn A. Granger. The children’s mother, Mary Mardine Ortego Granger, has appealed the trial court judgment. We affirm.
Dr. and Mrs. Granger separated in May 1982. After a short hospital stay Mrs. Granger refused to return to the family home. When she left the hospital Mrs. Granger moved, along with the children, to her parents’ home. Dr. Granger filed suit for separation on the ground of abandonment and sought custody of the children. In the same suit Mrs. Granger moved for custody of the children and occupancy of the family home pending partition of the community.
The custody rules were consolidated and tried on September 14 and 16, 1982. Both sides offered extensive testimony. The trial judge rendered judgment awarding to Dr. Granger the custody of the children. Mrs. Granger’s motion was dismissed.
Mrs. Granger contends on appeal that the trial judge abused his discretion by using improper criteria in reaching his decision to grant custody to Dr. Granger. According to Mrs. Granger, the trial judge did not base his decision on the “best interest of the children.” It is argued that the trial judge directly violated Civil Code art. 146.[1]
*664 FACTS
Dr. Glynn Granger and Mary Ortego Granger were married on December 27, 1969. At that time Mrs. Granger was an elementary school teacher and Dr. Granger was completing his surgery residency. In 1974 the couple made their home in Opelou-sas, Louisiana. Opelousas is also Mrs. Gran-ger’s home town. Dr. Granger is now practicing medicine specializing in general surgery. Three children were born of the marriage; Judd, Monique and Charisse.
The marriage has been rather stormy. During the twelve plus years of their marriage Mrs. Granger has left the matrimonial domicile on five or six occasions; each time she fled to her parents’ home in Opelousas. These separations lasted for varying lengths of time, the longest being approximately four months, but each time the couple reconciled.
Mrs. Granger testified that Dr. Granger physically and mentally abused her “quite frequently” throughout the marriage. She said that in the past she returned to the matrimonial domicile for the sake of the children. Dr. Granger acknowledges he struck his wife on four specific occasions. He maintains that in each instance Mrs. Granger had precipitated the violence by stabbing him. Dr. Granger also acknowledges that from time to time he suggested to Mrs. Granger that she seek counseling.
Dr. William Cloyd, a psychiatrist, examined Mrs. Granger for evaluation purposes only and testified at trial. According to Dr. Cloyd, he found no indication of either a serious mental illness or an organic brain problem in Mrs. Granger. In his written report Dr. Cloyd said Mrs. Granger appeared to be functioning at a high-average area of intellect and there was no indication of psychosis. Further he said it appeared Mrs. Granger has functioned as a “rather schizoid or distant type personality throughout her life.” Dr. Cloyd’s report concluded Mrs. Granger was capable of fulfilling her role as a mother. At trial Dr. Cloyd stated it would not be detrimental to the children to be in Mrs. Granger’s custody.
THE FATHER’S WITNESSES
Numerous witnesses testified for both parties. Dr. Granger’s witnesses were neighbors, patients, associates and employees of his medical practice, and his mother. These witnesses testified that Dr. Granger had a very good relationship with his children and that they had seen the doctor, particularly in the last two or three years, doing most of the grocery and clothes shopping with and for the children. Dr. Gran-ger’s witnesses stated they had seen Mrs. Granger rarely, if ever, accompanying the children to church, school or social functions.
One couple, the A.C. Thibodeauxs, testified about two vacation trips they took with Dr. Granger and the children. On neither of these trips, to Florida in 1981, or Knoxville in 1982, did Mrs. Granger accompany her husband and children. Mrs. Granger acknowledged it had been years since she had traveled with her children.
Two women who were neighbors of the Grangers testified about the “poster incident.” Both of the ladies told of seeing hand lettered posters displayed in the window of the Granger home and in Mrs. Gran-ger’s car which bore the following: “Don’t trust lawyers, doctors or other men.” When questioned about the posters at trial Mrs. Granger stated she had a childish, foolish idea to make and exhibit the signs. Mrs. Granger also said the message on the posters reflected a general attitude she held. The trial judge listed Mrs. Granger’s “suspicious or abnormal behavior concerning the poster proclamation” as a factor negative to Mrs. Granger.
Two doctors, a patient of Dr. Granger’s Dr. Granger’s nurse and two neighbors all testified concerning Mrs. Granger’s refusal to take telephone messages for Dr. Granger. Each of these witnesses told of instances *665 when, after reaching the Granger residence, Mrs. Granger hung up on them. The trial judge specifically noted Mrs. Granger’s “disregard of, or irresponsibility in, taking phone calls of vital importance” as another factor which was negative to Mrs. Gran-ger’s ease.
Dr. Granger’s witnesses were consistent in their statements concerning Mrs. Gran-ger’s lack of involvement in normal family activities, particularly over the past two or three years. Couples that had socialized with the Grangers shortly after they arrived in Opelousas reported that the social relationships had all but ceased. People who had seen Mrs. Granger more active in the past noticed she became more withdrawn as time passed. Mrs. Granger herself acknowledged she did not believe in social clubs and had never attended a meeting of her children’s school parent-teacher organizations; this is the same school for which Dr. Granger served as a school board member.
The record shows that Dr. Granger’s mother, a sixty-two year old widow, is available and willing to move into the Gran-ger home to assist in taking care of the children and providing housekeeping services. The record also reflects that the children usually spend every other weekend with their father at his grandmother’s farm in Maurice, Louisiana. The children are familiar with their Grandmother Granger.
THE MOTHER’S WITNESSES
All of Mrs. Granger’s witnesses were related to her. The Ortegos, Mrs. Granger’s parents, testified that the children enjoyed an excellent relationship with their mother and that Mrs. Granger was a model parent while living at their home. Mrs. Granger’s brother, Brad, testified that the children enjoyed living at their grandparents and that they often took advantage of the fishing ponds, riding horses and tennis courts found on the Ortego family compound. He also testified that his sister enjoyed a normal, happy relationship with her children.
Mrs. Granger’s brother-in-law, Ken Wade, testified that he saw Dr. Granger strike Mrs. Granger. The Wades lived across the street from the Grangers at the time of the incident. Mr. Wade did not see if Mrs. Granger stabbed her husband just before he struck her. Mr. Wade’s statement does not contradict Dr. Granger’s version of one of the stabbing-hitting incidents. Diane Wade, Mrs. Granger’s sister, also testified to the quality of Mrs. Gran-ger’s care for the children and Dr. Gran-ger’s abusive behavior.
THE CHILDREN’S INTERVIEWS
All three children were interviewed, in private, by the trial judge. The two children expressing a preference would choose to live with Dr. Granger. Each of the children recalled an incident in which Dr. Granger struck his wife, and in which Mrs. Granger had a knife in her hands. No purpose would be served by further scrutiny of the children’s testimony.
The trial judge also directly addressed the conflicting testimony concerning violence between Dr. and Mrs. Granger. Throughout, Mrs. Granger denied any stabbing incidents. Dr. Granger acknowledged striking his wife but insisted he only did so in self-defense after being stabbed. Dr. Granger exhibited four separate sears to the trial judge; one sustained in each reported incident. The children each mentioned seeing their mother holding a knife and their father bleeding. The judge stated:

“[A] pertinent result overall was that the evidence on that controversy made less reliable the wife’s testimony on other issues.”

LAW
In Thornton v. Thornton, 377 So.2d 417, 419 (La.App. 2nd Cir.1979), a case involving the award of custody of four minor children to their father when the mother was not found to be unfit, the court said:
“The evidence supports the trial court’s conclusion that as between the mother and father, the father is, at this time, better suited to provide a suitable home *666 for the children and that it is in their best interest to be in his custody. The evidence would not support a finding that the mother is incapable or unfit — morally, physically, or mentally — of taking care of the children. The evidence does, however, support a finding that she is less capable or fit, at this time, than the father. The evidence establishes some degree of erratic and unpredictable behavior on her part in the months preceding the separation, which could be due to illness or to the strain of the marital unhappiness which had developed between her and her husband.”
The above quote closely fits our case. We believe the court has soundly exercised its judgment and discretion in finding, after seeing and hearing all of the witnesses, that Dr. Granger should be given custody of the children.
Mrs. Granger’s argument on appeal is that the trial judge held a personality contest and, upon finding the doctor had a “better” personality, made the custody decision on that basis rather than on the proper “best interest of the children” basis. We do not agree with Mrs. Granger’s assessment of the trial judge’s actions.
It is true the trial judge, in his reasons for judgment, did not use the words: “best interest of the children.” However, the above rubric is no more magical than any other. The language used by the trial judge was as follows:

“I do not consider the wife as lacking in minimal parenting ability. My conclusion was based on the father offering the better prospect for reliable, responsible and stable parenting than the mother. There are not just one or two factors that are decisive. The conclusion comes from the cumulative effect of most of the evidence in the case. It is essentially a judgment call. I use the expression ‘most of the evidence’ because there was useless testimony from both sides.”

After mentioning examples of “useless testimony” offered by each party the trial judge went on to list certain factors or incidents which reflected negatively on Mrs. Granger. These were:
“... (1) an extreme or abnormal or asocial or private life style; (2) a refusal to participate in family activities without justifiable reasons; (3) a failure to participate in activities with her children; (4) a significant degree of non-attention to the children’s needs; (5) a suspicious or abnormal behavior concerning the poster proclamation; (6) a disregard of, or irresponsibility in, taking phone calls of vital importance; and (7) the forced discharge from the hospital.”
The crux of Mrs. Granger’s appeal, indeed its only foundation, is found in the next paragraph of the reasons for judgment where the trial judge said:
“Because this letter is written in response to request by wife’s counsel, I have not listed the considerations negative to the husband. There are shortcomings in the father. A point-by-point comparison would not advance my explanation of the decision. The custody award must fall or stand on the wife’s shortcomings of personality and character. This is so because other factors external to the parties’ personalities or characters are mostly in the wife’s favor but not sufficiently to override the deficits of personal traits." (Emphasis added.)
Mrs. Granger cites the emphasized sentence above as the basis of the trial judge’s decision. We disagree. The trial judge’s decision was based on his judgment of what was in the best interest of the children. The factors which tipped the balance toward Dr. Granger, according to the trial judge, were the personality and character defects of Mrs. Granger. Dr. Granger did not receive custody because he had a better personality or character than did Mrs. Gran-ger. Rather, Dr. Granger got custody because it was in the best interest of the children that they not be with the parent which possessed the defects mentioned.
Trial judges are given great discretion in custody matters. The trial judge has seen the witnesses. He has noticed their demeanor on the stand and he has seen their conduct. In Bordelon v. Borde- *667 lon, 390 So.2d 1325 (La.1980), the Louisiana Supreme Court commented on the standard of review to be used in child custody cases. They stated:
“This Court has clearly stated that in child custody cases, the procedure for appellate review is to give great weight to the determination of the trial judge, and to overturn a determination only when there is a clear abuse of discretion. Fulco, [v. Fulco, 259 La. 1122, 254 So.2d 603 (La.1971) ]; Cleeton v. Cleeton, 383 So.2d 1231 (La.1980). This test is substantially similar to the rule applied by the appellate court, which prevents the upsetting of a trial court determination of fact unless it is ‘clearly wrong.’ Arceneaux v. Domingue, 365 So.2d 1330 (La.1979) [sic]
Although the trial judge did not use the exact phraseology contained in the controlling Civil Code article he did, we believe, reach his decision based upon his determination of what was in the best interest of Judd, Monique and Charisse Granger. In balancing many factors the trial judge found a near equal balance; thus, the mother’s personality and character defects became determinative. We cannot say the trial judge abused his discretion or was clearly wrong in his decision.
Mrs. Granger’s brief cites a list of cases in which mothers have regained custody of children at the appellate level when the Courts of Appeal have found the trial courts were wrongly using the custody proceeding to punish a mother for her past activities. These cases are inapplicable here. Most of the cases cited involve adulterous wives and mothers who “reformed” themselves and thus have maintained custody.[2] The other cases cited by Mrs. Granger deal with custody battles between parents and non-parents; that is not our current situation.[3]
Mrs. Granger cites several cases which decide that continuity and stability of the children’s living situation is of primary importance. In these cases the parent with custody had had the child for six years. Deese v. Deese, 387 So.2d 671 (La.App. 3rd Cir.1980), writ den., 393 So.2d 740 (La.1980); and seven years, Johnston v. McCullough, 410 So.2d 1105 (La.1982). The court felt in those cases that the long term custody by one parent coupled with the desirable aspects of continuity and stability outweighed any added benefit the child might receive in changing custody. In the case at hand, the children have continued to live in the same town throughout the litigation. They have attended their same school and presumably their same church. The children had only been alone with their mother for five months at the time of the trial court’s decision. There are no overriding concerns for long established living arrangements present in this case.
CONCLUSIONS
The trial judge awarded custody of the three minor children of the marriage to Dr. Granger based on the best interest of the children. The trial judge’s decision does not violate Civil Code art. 146. The decision is not an abuse of the great discretion afforded trial judges in child custody cases and neither is it clearly wrong.
For the reasons assigned, the judgment of the trial court is affirmed. All costs of this appeal shall be paid by Mrs. Mary Mar-dine Ortego Granger, defendant-appellant.
AFFIRMED.

. Judgment in this case was rendered on October 19, 1982. This appeal is decided under the then applicable law. Articles 146 and 157 of the Civil Code concerning child custody have *664 been amended to create a presumption that joint custody by the parents is in the best interest of the children. These amendments became effective on January 1, 1983. They are not applicable to this case.

. Johnston v. McCullough, 410 So.2d 1105 (La.1982), no immorality on mother’s part; Cleeton v. Cleeton, 383 So.2d 1231 (La.1979), wife terminated open association with paramour; Manley v. Manley, 389 So.2d 454 (La.App. 2nd Cir.1980), writ den., 395 So.2d 341 (La.1980), no evidence of adulterous relationship; Shackleford v. Shackleford, 389 So.2d 825 (La.App. 3rd Cir.1980), mother married paramour.

. Burt v. McKee, 384 So.2d 489 (La.App. 2nd Cir.1980), mother vs. maternal grandfather; Larkin v. Larkin, 386 So.2d 376 (La.App. 4th Cir.1980), mother vs. paternal grandmother; Duffie v. Duffie, 387 So.2d 654 (La.App. 1st Cir.1980), writ den., 390 So.2d 1345 (La.1980), mother vs. maternal aunt and uncle.