WATKINS, Judge.
Gloria-Ann Lee Hill and Terry J. Hill were divorced by judgment dated July 27, 1979. Permanent custody of the couple’s two minor children was awarded to Mrs. Hill, and Mr. Hill was ordered to pay child support in the amount of $200.00 per week for the two children. By judgment dated July 8, 1981, child support was reduced to $600.00 per month. Also, under the July 8, 1981 judgment, the sum of $1,600.00 was set as past due child support (arrearages) and attorney’s fees for Mrs. Hill were set at $300.00, and these amounts were made ex-ecutory. By petition for rule nisi filed July 28,1981, Mr. Hill sought to have permanent custody of the two minor children removed from Mrs. Hill and awarded to him in the best interests of the two children, and to have child support terminated. Mrs. Hill reconvened, seeking judgment for arrearag-es. The trial court pretermitted the question of arrearages, and after a lengthy hearing on custody, awarded custody of the two minor children to Mr. Hill, ordering child support discontinued. Mrs. Hill appealed. We affirm. The sole question before us on appeal is the correctness of the action of the trial court in awarding custody of the two minor children to Mr. Hill.
The trial court in oral reasons was obviously strongly influenced by Mrs. Hill’s past and continuing association with a number of men, with at least two of whom she had sexual relations while the two minor children, both daughters, one aged 10 and one aged 13, were in the same house.
Mrs. Hill worked as a manager and bartender at two cocktail lounges in Baton Rouge, first at the Sanctuary and then at the Tonga Isle. While working there, she met Tommy McDuff. After a rather brief acquaintance, during which Mr. McDuff admitted he had sexual relations with Mrs. Hill, Mrs. Hill invited Mr. McDuff to live in her house. Mr. McDuff moved into Mrs. Hill’s home in which both he and she occupied the master bedroom. Mr. McDuff lived there from October of 1980 until April of 1981, while both minor daughters were constantly present. He baby-sat for Mrs. Hill when she was at work and on those occasions when, after getting off work, Mrs. Hill stayed out until noon the next day, as she did rather frequently. Mr. McDuff paid Mrs. Hill $150 to $200 a month to live in her house.
Finally, Mrs. Hill got a job as night bookkeeper at K-Mart. She frequently took her two daughters to K-Mart to spend the night and permitted them to watch television in a lounge, apparently provided for K-Mart employees, until 2:00 a.m.
Mrs. Hill was frequently depressed and had strong suicidal tendencies. While in the presence of the children, Mrs. Hill made repeated threats to kill herself and threats *410 to kill both herself and the two minor daughters as well. In front of the girls she talked about shooting herself and the two daughters, or throwing the girls into a gas fireplace, or killing herself by running into a lamppost or her most favorite threat, by driving her car into the Mississippi River. Apparently these were not all idle threats for she did actually take overdoses of a prescribed tranquilizer on several occasions. On one occasion in particular she could not be roused and was sent by ambulance to Our Lady of the Lake Hospital where she was diagnosed and treated for prescription abuse. As she lay on what she believed was her death bed, she dictated a death note to her young daughter Elizabeth. Elizabeth, in accordance with her mother’s instructions, wrote down what she thought were to be her dying mother’s last wishes for the disposition of certain items of property and also detailed funeral instructions. That Mrs. Hill subjected her 13 year old daughter to such an anguishing experience reveals a very troubled and clouded mind. This is further evidence by an incident in which Mrs. Hill even went so far as to offer Valiums to the children. This frightened the children so that the ten year old began to cry and the thirteen year old ran out of the house.
These facts alone are sufficient to convince us that living with their mother is a painful and an emotionally disturbing experience. But in addition to the foregoing, the children were also aware that Mrs. Hill was having sexual relationships with several different men. As previously stated, Mrs. Hill had a male roommate, and numerous other male friends as well. She took the children on several trips with a Mr. Nash to a cabin in Texas, where she and Mr. Nash occupied the same bedroom. Elizabeth, the thirteen year old daughter, was aware that Mr. Nash and her mother were in bed together.
The trial court transferred custody of the two daughters to Mr. Hill because it believed Mrs. Hill’s relationship with Mr. McDuff, Mr. Nash and a Mr. Thompson were not in the “best interests of those little girls”. The trial court properly applied the law. The sole test for granting or transferring custody is the best interests of the child. LSA-C.C. art. 157; Bordelon v. Bordelon, 390 So.2d 1325 (La.1980).
We agree that living with a mother who, in front of her children, has repeatedly threatened to take her own life, threatened to take the life of her children, offered prescription depressants to her children and who has continuing sexual relationships with several different men is quite damaging to the daughters, who are in their formative years. Furthermore, the custody decisions and evaluations of fact by the trial court in such cases are entitled to great weight and should be overturned only when there is a clear abuse of discretion. Cleeton v. Cleeton, 383 So.2d 1231 (on rehearing, La.1980); Bordelon v. Bordelon, supra; Stephenson v. Stephenson, 404 So.2d 963 (La.1981). Here, we are in complete agreement with the trial court. The trial court was not guilty of a clear abuse of discretion, but entirely correct.
In the case sub judice the mother’s sexual misconduct is not the primary or the sole consideration upon which we base our decision. The mother’s obvious emotional instability and gross lack of parental responsibility is deleterious to the children’s welfare and contrary to their best interests. Nothing is more powerful in molding children approaching adolescence than the example furnished by their parents. Obviously, Mrs. Hill’s immoral conduct and her lack of parental responsibility, by all known standards of psychology and sociology, has had a harmful molding effect upon her two daughters. In determining the best interests of the children, it is obvious that living with their mother is a disruptive and emotionally upsetting experience for them.
We thus find that the harmful effect of Mrs. Hill’s custody has been proven. The best interests of the two children demand that their custody be awarded to Mr. Hill, their father, and that the judgment of the trial court in so doing be affirmed, at appellant’s costs.
AFFIRMED.