452 So.2d 376 (1984)
Howard Dwight LAKE, Plaintiff-Appellant,
v.
Juanita Durand Lake ROBERTSON, Defendant-Appellee.
No. 83-700.
Court of Appeal of Louisiana, Third Circuit.
June 27, 1984.
*377 Ralph W. Kennedy, Alexandria, for plaintiff-appellant.
James M. Buck, Alexandria, for defendant-appellee.
Before CUTRER, DOUCET and YELVERTON, JJ.
DOUCET, Judge.
Plaintiff-Appellant, Howard Dwight Lake, seeks a change of custody of his minor daughter from the mother to himself. Alternatively, plaintiff seeks joint custody. From an adverse judgment, plaintiff appeals.
These proceedings began in Alabama following the husband's unilateral removal and detention of the child during a scheduled visitation period. The court in Alabama declined jurisdiction in the matter *378 due to the fact that the mother resided in Louisiana at the time and had been awarded custody. Thereafter, plaintiff filed an action for custody in Grant Parish while maintaining custody of the child in derogation of the Alabama decree ordering the minor be returned to the mother. Defendant responded by excepting to the jurisdiction of Grant Parish due to the fact that her domiciled residence was in Rapides Parish. The Grant Parish District Court upheld the venue exception and subsequently the matter was transferred to Rapides Parish District Court. There, it was ordered that the child be returned to Mrs. Robertson. When the matter was heard on the merits the District Court denied the plaintiff his request for a change of custody.
Plaintiff appeals filing two specifications of error, to-wit: 1) The trial court committed manifest error in failing to award sole custody of the minor child to the father and, 2) Alternatively, the trial court committed an error of law in failing to award joint custody.
Plaintiff introduced substantial evidence casting doubt on the moral fitness of the mother as custodian of the child, however, many of the alleged acts of bad character occurred prior to the birth of the child. Thus, these matters are of only minimal relevance to the best interest of the child, nevertheless, these past acts do tend to show the overall character of the mother. She has been married and divorced a total of four times and, at the time of the trial, was engaged in extramarital relationship with one Felix Peterman. Three private investigators testified as to the mother's continuing relationship with Mr. Peterman and the fact that the defendant involves her minor daughter in this relationship by taking the child on nightly visits to the home of Mr. Peterman. It should be noted that these three private investigators were hired by the defendant's prior husband, Rance Robertson, and not by the present plaintiff.
In addition, there is testimony by one Lewis Villemarette who testified as to his relationship with the defendant mother which began sometime before her marriage to the plaintiff and continued through a period of time shortly before that marriage. Mr. Villemarette is a convicted felon and he testified that the defendant had participated in one criminal incident (for which he was convicted of battery) by hiding him and his vehicle from the police for a period of two days.
Carol Robertson testified on behalf of the plaintiff concerning the conduct of defendant during the period she was married to Rance Robertson. He related that the defendant had a violent temper and additionally testified that he had observed his former daughter-in-law fire a pistol in the direction of his son on one occasion.
Mildred Self was also called to the stand and she testified that during the period that plaintiff and defendant were married, both had lived with her a brief period of time and on one occasion, she had been called to the home of a male acquaintance of the mother for the purpose of bringing her home because the defendant was unable to undertake this herself as a result of some physical condition.
Rance Robertson testified to the pre-marital relationship that existed between himself and the mother before they were married and the fact that the defendant also involved the child in that relationship. He further testified that he obtained his divorce from his wife, the defendant herein, on grounds of adultery.
Daniel Lonowski, a clinical psychologist, with considerable experience in the area of child neglect and abuse, testified that he had evaluated the child and found her to be intelligent and found no evidence of abuse or neglect after the child had been in the custody of the father for a period of a month. He further testified that the child had expressed a desire to live with her father, in preference to the mother although she was unsure whether she wanted to live in Alabama forever. The psychologist attached significance to the child's preference.
*379 The record discloses that the plaintiff is a businessman in Phoenix City, Alabama, and can provide an adequate home for the minor child and the record further shows that he is a fit and proper person.
The principal consideration in every child custody case is the best interests and the welfare of the child. Bagents v. Bagents, 419 So.2d 460 (La.1982). Appellant contends the record discloses the trial court abused its discretion and the best interests of the child mandates that he be awarded custody. On the other hand, the mother contends that her acts of adultery or promiscuity are insufficient to deny her custody of her child when she is otherwise fit, citing: Johnson v. Johnson, 331 So.2d 854 (La.App. 1st Cir.1976); Nale v. Nale, 409 So.2d 1299, (La.App. 2nd Cir.1982); Manley v. Manley, 389 So.2d 454, (La.App. 2nd Cir.1980) writ denied 395 So.2d 341 (1980); and Cleeton v. Cleeton, 383 So.2d 1231 (La.1980). In addition, the defendant points to the fact that a majority of the states in this country recognize commonlaw marriages.
A mother's indiscreet sexual affairs have been found to warrant a change of custody when it is shown that the father is a better parent. Hill v. Hill, 421 So.2d 408, (La. App. 1st Cir.1982); Tabor v. Tabor, 421 So.2d 1185 (La.App. 2nd Cir.1982). We note that all of the above cited cases were decided prior to adoption of our joint custody laws which were in effect at the time of the decree appealed herein.
The moral fitness of the parties is only one of eleven factors to be considered in determining when the presumption in favor of joint custody has been rebutted by a showing that it is not in the best interest of the child. La. C.C. art. 146(C)[1]. A parent's actions and attitudes toward sex outside marriage are but one aspect of moral fitness. Thus, where the only evidence of moral unfitness was the mother's living with a man she planned to marry, our brethren of the Second Circuit in Peters v. Peters, 449 So.2d 1372 (La.App. 2nd Cir.1984) held the trial judge did not err in granting joint custody and in refusing sole custody to the father.
As was noted in Louisiana's New Joint Custody Law, 43 LA.L.REV. 759 at 767 (1983): "Although parental fitness is surely still relevant to the best interest of the child, its importance may decrease for several reasons. The presumption in favor of joint custody eliminates the need for each parent to prove that he or she is more fit than the other parent. When joint custody *380 is awarded, it does not matter which parent is `more fit', so long as both are fit."
La.C.C. art. 157 provides in pertinent part that in all cases for change of custody after the original award, custody shall be granted in accordance with Article 146 which states that joint custody shall be presumed to be in the best interest of the child. The joint custody statutes evidence a legislative policy that both parents should have an equal voice in rearing a child, and participating in decision-making regarding health, education, social and religious development. It reflects a legislative desire to lessen animosity between father and mother, permitting the children to have close relations with both parents.
The burden of proof that joint custody would not be in a child's best interest shall be upon the parent requesting sole custody. La.C.C. art. 146 (A)(2). Our review of the record reveals that the trial judge did not address whether the mother's continued sole custody would be in the child's best interest as required by La.C.C. arts. 157 & 146. The issue of joint custody was properly before the trial judge and defendant should have introduced evidence to establish that continued sole custody was in the child's best interest once the father had established he was a fit parent.
We believe the trial judge is in a better position to determine applicability and allocation of joint custody following the parties' submission of an implementation plan pursuant to La.C.C. art. 146 (A)(1). The submission of a joint custody plan will allow the court to examine the specifics of the arrangement and determine the parties' willingness to cooperate. Nevertheless, we note that nothing in article 146 precludes the trial court from developing its own joint custody plan if required for the child's best interest. Accordingly, under the authority of La.C.C. Pro. art. 2164, we remand this case for the purpose of consideration of implementing a joint custody decree. Cf: Creary v. Creary, 447 So.2d 60 (La.App. 1st Cir.1984). Accord: In Re Marriage of Levin, 102 Cal.App.3d 981, 162 Cal.Rptr. 757 (1980).
For the reasons assigned, the judgment appealed is vacated as it did not address joint custody and the case is, therefore, remanded for further proceedings consistent with this opinion. Costs of this appeal are to be divided between the parties.
VACATED AND REMANDED.
NOTES
[1] C. There shall be a rebuttable presumption that joint custody is in the best interest of a minor child.

(1) However, the parents may agree to an award of custody to one parent.
(2) The presumption in favor of joint custody may be rebutted by a showing that it is not in the best interest of the child, after consideration of evidence introduced with respect to all of the following factors:
(a) The love, affection, and other emotional ties existing between the parties involved and the child.
(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his religion or creed, if any.
(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care, and other material needs.
(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.
(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(f) The moral fitness of the parties involved.
(g) The mental and physical health of the parties involved.
(h) The home, school, and community record of the child.
(i) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(j) The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent.
(k) The distance between the respective residences of the parties.
(l) Any other factor considered by the court to be relevant to a particular child custody dispute.