LABORDE, Judge.
We granted writs in this case to determine the correctness of the trial court’s judgment of custody of two children, ages five and six, who were bom of the union between Rachel Ray Veillon, plaintiff-appellant, and Linda Strite Veillon (now Woodard), defendant-appellee. The trial court awarded the permanent care, custody, and control of both children to the mother, Ms. Veillon. Mr. Veillon was granted specific visitation privileges as part of the judgment. We reverse.
The parties were married November 1, 1976, when both were members of the United States Air Force. Ms. Veillon is still an active member, whereas Mr. Veillon has been discharged.
On August 1, 1981, the parties physically separated. The children have,' from that date to the present, resided with their father, Mr. Veillon.
On April 6, 1982, Mr. Veillon sued Ms. Veillon for a judgment of separation from bed and board. A consent decree was issued on May 12, 1982, granting legal custody of the children to Mr. Veillon.
On November 2, 1982, a judgment by stipulation was issued, whereby Ms. Veillon was ordered to pay $400.00 per month to Mr. Veillon. Mr. Veillon retained custody of the children, again without opposition by Ms. Veillon.
On January 19, 1983, Mr. Veillon was granted a judgment of divorce from Ms. Veillon. The earlier judgment, granting custody of the children to Mr. Veillon, was reaffirmed. Again, there was no opposition by Ms. Veillon.
The instant proceeding was initiated July 17, 1985, when Ms. Veillon filed a rule to change custody. At its conclusion, the judge ordered that sole custody of the children be awarded to Ms. Veillon. Mr. Veil-lon was awarded specific visitation privileges.
On September 6, 1985, we granted Mr. Veillon’s petition for a supervisory writ, and stayed all proceedings in this matter. The children have thus remained in the physical custody of Mr. Veillon.
We now consider on writs the propriety of the trial court’s custody award. We shall also rule on two motions filed by Mr. Veillon. One motion is for an increase in child support payments from Ms. Veillon, and the other is for a modification of Ms. Veillon’s visitation privileges.
According to La.Civ.Code art. 157(A), “[i]n all cases of separation and divorce, and change of custody after an original .award, permanent custody of the child or children shall be granted to the parents in accordance with Article 146.” La.Civ.Code art. 146 provides in pertinent part:
“A. If there are children of the marriage whose provisional custody is claimed by both husband and wife, the suit being yet pending and undecided, *466 custody shall be awarded in the following order of preference, according to the best interest of the children:
(1) To both parents jointly....
(2) To either parent. In making an order for custody to either parent, the court shall consider, among other factors, which parent is more likely to allow the child or children frequent and continuing contact with the noncustodial parent, and shall not prefer a parent as custodian because of that parent’s sex or race. The burden of proof that joint custody would not be in a child’s best interest shall be upon the parent requesting sole custody.
C. There shall be a rebuttable presumption that joint custody is in the best interest of a minor child.
(1) However, the parents may agree to an award of custody to one parent.
(2) The presumption in favor of joint custody may be rebutted by a showing that it is not in the best interest of the child, after consideration of evidence introduced with respect to all of the following factors:
(a) The love, affection, and other emotional ties existing between the parties involved and the child.
(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his religion or creed, if any.
(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care, and other material needs.
(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.
(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(f) The moral fitness of the parties involved.
(g) The mental and physical health of the parties involved.
(h) The home, school, and community record of the child.
(i) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(j) The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent.
(k) The distance between the respective residences of the parties.
(l) Any other factor considered by the court to be relevant to a particular child custody dispute. However, the classification of persons according to race is neither relevant nor permissible.
(8) For the purpose of assisting the court in making a determination whether an award of joint custody is appropriate, the court may direct that an investigation be conducted.
D. For the purposes of this Article, “joint custody” shall mean the parents shall, to the extent feasible, share the physical custody of children of the marriage. In making an award of physical custody, the court shall consider, among other things, the factors enumerated in Paragraph (C)(2). Joint custody shall also mean that the parents shall enjoy the natural cotutorship of such children in accordance with Article 250, subject to the plan of implementation effected pursuant to Paragraph A of this Article. Physical care and custody shall be shared by the parents in such a way as to assure a child of frequent and continuing contact with both parents. An award of joint custody obligates the parties to exchange information concerning the health, education, and welfare of the minor child; and, unless allocated, apportioned, or decreed, the parents or parties shall confer with one another in the exercise of decision-making rights, responsibilities, and authority.”
The appropriate standard to be applied by the trial court in determining the custody of a child of a dissolved marriage is that of the “best interest of the child.” This *467 standard is repeated throughout article 146, and is the sole criterion to be met in making the award. Turner v. Turner, 455 So.2d 1374 (La.1984).
The trial court declined to award the parties joint custody of the children, which is the preferred custodial arrangement under article 146. We agree with this determination, primarily because the mother lives in Ohio, and the father lives in Louisiana. The natural cotutorship, shared physical custody, and frequent and continuing contact with both parents, which joint custody implies, would be unworkable. It would not serve the children’s best interests. The presumption favoring joint custody has been clearly rebutted by both parties.
The issue, therefore, is whether the trial judge erred in concluding that an order of custody to the mother would serve the best interest of the children.
Several witnesses testified before the trial court, including Mr. Veillon, Mr. Veil-Ion’s fiancée, Ms. Veillon, and Ms. Veillon’s current spouse. After reviewing their extended testimony, the judge stated: “the economic outlook with either parent is excellent, and the love of all the possible step-parents is present. No matter what the outcome, the children will be provided for, loved, and given excellent medical care.”
Article 146(A)(2) requires the court to consider, among other factors, which parent is more likely to allow the children frequent and continuing contact with the noncustodial parent. There are but two elements upon which the trial court cannot base its decision. Article 146(A)(2) expressly forbids the judge from “prefer[ring] a parent as custodian because of that parent’s sex or race.”
The relator argues that the trial court: 1) erred by applying the now rejected maternal preference doctrine; 2) erred in failing to consider all the factors which article 146 requires; and 3) abused its discretion in changing the custody.
The trial judge listed fifteen reasons for his judgment, which we reproduce below:
“1. The children are adaptable.
2. They are young enough not to have permanent attachments.
3. A severe break in their lifestream is imminent, — if given to the father they will go from a surrogate mother to a step-mother. If given to the mother, they will go from a surrogate mother to a real mother, — however, with a stepfather.
4. Now is the time to shape their future life permanently.
5. The mother will have no more children. The two girls will be the focus of attention.
6. If given to the father, they will become part of a family with five children, — three of whom they are not related to [sic].
7. The father and stepmother may have other children.
8. Both children, and in particular, Rachel, will have better access to large medical establishments under Air Force supervision.
9. Assigning the children to the mother will almost rule out any possibility of her transfer.
10. The mother’s future is guaranteed by the Government (The step-father’s future as well)
11. Lengthy visitation with the mother has produced no ill effects.
12. The children have arrived at an age where, in this Court’s opinion, they are' beginning to understand the meaning of mother, and express a present desire, admitted by the Husband and his family, — to live with the mother.
13. The Court believes the mother has demonstrated her willingness and ability to make any sacrifice, including giving up her children temporarily, for their best interest, when she became helpless to care for them.
*468 14. The mother has made greater sacrifices than the husband for the benefit of the children.
15. Finally, this Court believes the Wife [sic] has earned the children through determination, blood, sweat and toil, and that she can and will give greater attention and succor to the children than the husband can.”
Relator asserts that reason number three constitutes an application of the maternal preference doctrine. The trial judge apparently estimated that placing young children with “a real mother — however, with a stepfather” is preferable to placing them with “a real father — however, with a stepmother.” We disapprove of the language in reason number three, but note that the custody award was not based exclusively on the mother’s sex. We therefore deem it necessary to point out an additional, and possibly more serious, deficiency in the judgment: the court failed to give sufficient consideration to the fact that the children have been living for four years in a satisfactory environment provided by their father, Mr. Veillon. By so doing, the trial court erred.
We repeat that the “best interest of the child” standard is articulated throughout article 146. Our Supreme Court has observed that stability and continuity must be considered in determining what is in the best interest of the child. Everett v. Everett, 433 So.2d 705 (La.1983).
We note that Mr. Veillon is about to remarry. His fiancée is Ms. Wanda Lee Thibodeaux. She testified at trial on behalf of Mr. Veillon. Ms. Thibodeaux is the Director of the Moosa Day Care & Development Center in Eunice, La. This facility specializes in the care and educational development of young children. Ms. Thibo-deaux has three children, ages ten, eight and six, by a previous marriage. These three children are already well acquainted with the Veillon children. Mr. Veillon and Ms. Thibodeaux plan to live together with the five children. Ms. Thibodeaux’s status as a professional in the field of child care weighs heavily in favor of continuing custody with Mr. Veillon.
We next note that Ms. Veillon is married to a Mr. David Herbert Woodard. They live together with Mr. Woodard’s nineteen year old niece and with Ms.. Veillon’s best friend. This latter person’s age was undisclosed, but she is enrolled in law school. Ms. Veillon proposes that the children live with her, Mr. Woodard, and the two other adults in Ohio.
Finally, we note that Mr. Woodard has been married six times. Each of his five previous marriages ended in divorce. He is now thirty-eight years old. We do not suggest that these facts presage another failed marriage. However, when coupled with the fact that the children have lived in a stable environment with the father for four years, Mr. Woodard’s marital instability and the proposed living arrangements in Ohio militate heavily against changing the existing custody plan.
Since the trial court’s order removes both of the Veillon children from the stable environment in which they have been living, and since there was no finding that the father was unfit to continue acting as custodial parent, we find clear abuse of the discretion with which the trial court is vested.
The trial court declined to grant a motion filed by Mr. Veillon to increase child support payments by Ms. Veillon, obviously because Mr. Veillon’s right to custody of the children was annulled. The pre-exist-ing decree ordering Ms. Veillon to pay $400.00 per month to Mr. Veillon for child support and maintenance is hereby reinstated. The motion to increase the payments is denied.
Mr. Veillon had filed an additional motion to modify Ms. Veillon’s visitation privileges.[1] The proposed arrangement is, *469 in substance, nearly identical to the one currently in force. It is, however, more specific, requiring Ms. Veillon to give Mr. Veillon notice prior to exercising her visitation privileges. This motion was also rendered moot by the trial judge’s change of custody order. We find that the proposed arrangement, which is unopposed by Ms. Veillon, is workable and in the best interest of the parties and of the children. We therefore grant the motion.
We further hold, that since all issues have been answered in this writ that are viable in the appeal, # 85-1036, presently pending before this court that the appeal is moot and is hereby dismissed at the cost of respondent, Linda Strite Veillon.
For the foregoing reasons, this writ is made peremptory and the judgment of the trial court is hereby reversed. The earlier decree granting custody of both children to Rachel Ray Veillon is reinstated. Relator’s motion to increase child support payments by defendant-appellee from $400.00 to $1000.00 is denied. Relator’s motion to modify defendant-appellee’s visitation rights is granted.
REVERSED.
GUIDRY, J., concurs and assigns written reasons.

. "Plaintiff desires that this Court modify the visitation privileges of LINDA STRITE VEIL-LON for the minor children, Christina Michell Veillon and Rachel Lynn Veillon, as follows:
*469 (a) for a period of one (1) week beginning not earlier than noon of the 27th day of December of each year and ending not later than 6:00 p.m. the day before school classes resume;
(b) for a period of one (1) week at Easter vacation of each year beginning not earlier than noon of the day after school is recessed and ending not later than 6:00 p.m. the day before school classes resume;
(c) for a period of six (6) consecutive weeks of each year beginning not earlier than noon of the 5th day of June and ending not later than 6:00 p.m. on the 20th day of August, commencing in the year 1984;
(d) for each of the above visitation periods, Defendant shall provide Plaintiff and the minor children with written notification of the date on which such visitation will begin and the date that said visitation shall end not less than thirty (30) days nor more than sixty (60) days immediately preceding the first day of visitation;
(e) the first weekend of the months of September, October, November, February, March and May, beginning at 6:00 p.m. on Friday and ending at 6:00 p.m. on Sunday and Defendant shall provide Plaintiff and the minor children of her intent to exercise such visitation not later than seven (7) days immediately preceding the first day of visitation;
(f) the exercise of any of the aforesaid visitation [sic] privileges shall not interfere with the minor children’s education and school schedule; and
(g) Defendant shall be responsible to [sic] provide all transportation in connection with all visitation at her own expense except Plaintiff shall provide transportation to and from the Lafayette Municipal Airport for the said minor children at the beginning and end of each visitation period.”