FORET, Judge.
This appeal arises out of a custody dispute over two minor children. Both mother, Cindy Reynaud, and father, André Rey-naud, applied for sole custody, requesting a change in the present joint custody order. The trial court denied each parent’s request for sole custody and maintained the previous joint custody order. The father of the two minor children has appealed the judgment, urging an abuse of discretion and manifest error in the trial court’s ruling.
We reverse the judgment of the trial court and award sole custody to the father.
The litigants are the parents of Kimberly B. Reynaud, now age 9, and Lori K. Rey-naud, now age 7. André was granted a separation from bed and board on October 29, 1982. At that time, Kimberly was 6 and Lori, 4. Custody was granted to the mother. Subsequently, André discovered his estranged 25-year-old wife living in the matrimonial domicile, with their children, in an adulterous relationship with a 17-year-old male. Consequently, André filed for a divorce on February 22, 1983, and requested sole custody.
The trial judge and the litigants agreed to a joint custody arrangement after negotiations between respective counsel took *296 place[1]. The order providing for joint custody gave each parent physical custody for one year periods on alternating years. The judgment was rendered on March 29, 1983, and signed on April 5, 1983. André was to have custody of the two children from March 29, 1983 until May 31, 1984. Cindy was to have custody from June 1, 1984 through June 1, 1985, etc.
André and Cindy were divorced on June 10, 1983. Cindy married her paramour, Mark Michael Scallan, on July 9, 1983, in Chicago, Illinois.
On August 13, 1984, Cindy filed a rule for change of custody, requesting sole custody. André likewise filed a rule on September 14, 1984 and requested sole custody or, in the alternative, a custody award to the paternal grandparents. From the lower court’s ruling on September 14, 1984 denying sole custody, André has appealed.
The standard of review in a child custody dispute requires the court of appeal to give the lower court’s decision great weight and to overturn that judgment only when there is a clear abuse of discretion. Warner v. Warner, 476 So.2d 1053 (La.App. 3 Cir.1985). Because we find that the trial court’s decision is clearly erroneous and an abuse of its discretion, we reverse.
The applicable law for this case is found in Arts. 146 and 157 of the Louisiana Civil Code. LSA-C.C. Art. 157A provides:
“In all cases of separation and divorce, and change of custody after an original award, permanent custody of the child or children shall be granted to the parents in accordance with Article 146.”
Art. 146, in a somewhat lengthy and detailed fashion, attempts to set out guidelines in custody cases. Quoting the article herein would serve no useful purpose. Suffice it to say that Art. 146 dictates that the appropriate standard to apply in a child custody determination is the “best interest of the child.” Turner v. Turner, 455 So.2d 1374 (La.1984); Veillon v. Veillon, 480 So.2d 464 (La.App. 3 Cir.1985).
The trial court stated that:
“Neither of these parents are stable as one might wish for them to be. The mother is especially a suspect in that area. However, for the benefit of the children and this is to their advantage, both grand ... the grandparents on both sides are stable and they both have, that is both the families, the grandparents have stable homes and this has been to the helpful benefit of the children. ... Nothing has been proved in this court today to justify any change of custody arrangements in this case.”
(emphasis ours)
We believe that the record in this case reflects that the statutory presumption favoring joint custody has clearly been rebutted by André. Additionally, the record lacks any evidence of the stability of the maternal grandparents. Aside from a statement by Francis Reynaud that the girls visited the maternal grandparents on occasional weekends, no other mention of contact between the girls and the maternal grandparents appears in the record.
Cindy admitted that while her husband worked offshore, she engaged in an adulterous relationship with Mark Scallan. The record reflects that upon obtaining sole custody and being judicially separated from André, Cindy allowed Mark Scallan to reside with her and the children in the matrimonial domicile. Although illicit sexual activity alone is not enough to deprive a parent of custody, the resulting detrimental effects on the children may be rightfully considered in the determination of what is in the best interest of the children. Davis v. Davis, 422 So.2d 680 (La.App. 3 Cir.1982); LSA-C.C. Art. 146C.(2)(b), (f) and (il). Cindy admitted engaging in her adulterous relationship in front of her children.
*297 The record reflects that the mother failed to provide a stable environment for the children. Cindy and her paramour changed residences a minimum of thirteen times between October, 1982 and September, 1984. Cindy had custody of the two minor children for some time during this erratic period. Continuity and stability must be considered in the determination of what is in the best interest of the children. Everett v. Everett, 433 So.2d 705, 708 (La.1983); Johnston v. McCullough, 410 So.2d 1105 (La.1982); Bordelon v. Bordelon, 390 So.2d 1325 (La.1980); LSA-C.C. Art. 146C.(2)(d) and (e).
The record indicates that the mother would often drop the children off at the home of the paternal grandparents on the spur of the moment, as if on whim. The children were also shuttled between her temporary home, wherever it might happen to be, and the grandparents’ home.
While Cindy and her paramour were living in Alexandria, the children did not receive regular schooling. At one time they were out of school for at least two weeks. Consequently, the paternal grandparents and the father have seen to the enrollment of the children in school. One of the rebutting factors listed in LSA-C.C. Art. 146 is “(t)he capacity and disposition of the parties involved to give the child ... and to continue the education ...” and “(t)he home, school, and community record of the child.” We believe that Cindy has failed to demonstrate an adequate interest in the girls’ schooling.
LSA-C.C. Art. 146C.(2)(j) provides an additional rebutting factor: “... willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent.” In November of 1982, Cindy and her paramour moved (with the children) to Lake Charles without notifying André or the grandparents of the change of address. After an independent investigation, the Reynauds were able to locate them. In André’s petition for sole custody, he expressed a fear that Cindy and her husband were contemplating moving to the state of Florida. We do not believe that Cindy has made an effort to facilitate and encourage a continuing parent-child relationship between the children and their father.
Now that she has remarried and her husband is gainfully employed, Cindy claims that she can provide for the daily needs of the children[2]. She testified that a room for the girls has been set aside in her home and that she is able to be at home with them and care for their needs. However, there is a conspicuous absence in the record of Mark Scallan’s feelings for the two girls. He did not testify that he loved them or wanted them to reside in his home. We áre unable to discern his feelings for the girls.
Mark Scallan was discharged from the Navy, after serving only seven months, for a physical disability diagnosed as “Bi-Polar Manic Depressive Disorder.” A psychologist testifying at trial stated that a person with such a disorder is irritable and easily excitable. Furthermore, he testified that such a person may be quite dangerous when angry because of the likelihood that such a person would “lash out” at another. For obvious reasons, the mental health of Cindy’s husband militates against the girls residing with Cindy. The stresses and friction which result from a home with several children are trying for the best of us, but for someone predisposed, the possibility of danger to the children cannot be ignored.
On November 21, 1982, while the two children were with her, Cindy was stopped by police, who found her disoriented and with an undisclosed amount of marijuana and cocaine in her vehicle. In addition to an admitted possession of narcotics, she conceded her disreputable and erratic past. At trial, Cindy denied any present use of narcotics.
*298 In contrast to Cindy’s circumstances, An-dré has proven that he is fit for custody. He is gainfully employed with an oil-related company which does require him to be out of town (he lives in the matrimonial domicile in Marksville) quite often.[3] However, during his absences the children are well provided for and cared for at the home of their paternal grandparents. In spite of his absences, André is carrying out his parental obligations diligently, regularly, and affectionately. Although he must entrust the care of the girls to his parents due to the necessity of working, that is not sufficient to deprive him of custody. King v. King, 245 So.2d 560 (La.App. 3 Cir.1971), and cases cited therein. The paternal grandparents have expressed affection for the children. The children have been living for quite some time in a loving and stable environment provided by their father and their paternal grandparents. Francis H. Reynaud, 69 years old and retired, testified that the only permanent home the children have known is his. He testified that the children looked at his home as theirs; that they, the grandparents, had raised the children since they were three months old. He testified that during the time of Cindy’s moves, while she shuttled back and forth between Lake Charles, Blue Town, Simmesport, Bordelonville, Alexandria, Marksville, and Belledeau, the children usually resided with them.
Additionally, the grandfather testified that at one time André filed suit for sole custody and Cindy never appeared in court to contest the issue. Apparently, she “dumped” the children and their belongings off in André’s front yard and she said, “you want the kids, take them.” André had physical custody of the children when Cindy had legal custody. The record is unclear on the length of time the children resided with André prior to the joint custody award, but it appears to have been approximately IV2 years.
In Lake v. Robertson, 452 So.2d 376 (La.App. 3 Cir.1984), the court indicated that alleged acts of bad character which occur prior to the rule for change of custody do tend to show the overall character of a parent. Moral fitness is one of several factors enunciated in LSA-C.C. Art. 146C. for rebutting the presumption favoring joint custody. Although acts of adultery and promiscuity alone are insufficient to deny custody to Cindy if she is otherwise fit, the record indicates that her history is not conducive to a stable environment for the children.
We believe André has demonstrated stability and continuity at his home and at the home of his parents. In Everett v. Everett, supra, the Supreme Court observed that stability and continuity were important considerations in determining what would be in the best interest of the children.
The trial court appeared to be of the opinion that neither parent was fit for sole custody. It abused its discretion in awarding joint custody to these litigants. We believe that the factual circumstances militate heavily against a joint custody award. The current arrangement provides for physical custody on alternating years. Such an agreement is as demanding on each parent as sole custody. Cindy has demonstrated that she is marginally unfit for sole custody and, therefore, unfit for joint custody under the present arrangement.
The presumption that joint custody is in the best interest of the children is rebut-table and in this case, rebutted. We believe that stability of environment and proper moral guidance are paramount for the best interest of these children. The relative moral, physical, mental, and economic fitness of both parents has been carefully considered. Accordingly, we award sole custody of the children to An-dré.
*299 André petitioned, in the alternative, for an award of custody to the paternal grandparents. Because we have awarded him sole custody, such an alternative need not be considered.
Accordingly, the judgment of the trial court is reversed, and sole custody of the minor children, Kimberly B. Reynaud and Lori K. Reynaud, is awarded to the father, André Reynaud, subject to reasonable visitation rights reserved to the mother, Cindy Reynaud, now Scallan.
It is further ordered that all child support obligations due by the father of the children to the mother, Cindy D. Reynaud, are terminated.
Costs of the trial court and of this appeal are assessed against appellee, CINDY D. REYNAUD.
REVERSED AND RENDERED.
DOMENGEAUX, J., concurs.

. André testified that he opted for joint custody thinking it would be least disruptive to the children. He withdrew his petition for divorce on the grounds of adultery and simply alleged abandonment.

. Cindy and her husband have a male infant who is 1 ½ years old in addition to the children of Cindy’s previous marriage.

. At the time of trial, André was working 14 days on and 14 off in Mobile, Alabama. He spends the two weeks off in Marksville in the matrimonial domicile, which is only a few blocks from the home of his parents. He testified that at the termination of the job in Mobile, he would be working closer to home in Port Barre.